Filed 1/31/18; Certified for Publication 2/26/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| COURTNEY E. RYBOLT, | C082857 |
| Plaintiff and Respondent, | (Super. Ct. No. 10FL05692) |
| v. | |
| JAMES E. RILEY IV, | |
| Defendant and Appellant. | |

Respondent Courtney E. Rybolt[1] obtained a domestic violence restraining order against appellant James E. Riley IV with whom she shares a minor child.  Rybolt later filed a request to renew the order.[2]  Following a contested trial in which both Rybolt and

---

[1]     At the time of trial, Rybolt was married to Joshua McGourty and her name had changed to Courtney McGourty.  For consistency purposes, we shall refer to her as Rybolt.

[2]     Rybolt's written request to renew the restraining order is not included in the record on appeal.

1

Riley testified, the court renewed the restraining order for five years. The court also modified a parenting plan to prohibit Riley from attending their son's extracurricular activities during Rybolt's parenting time, after finding that Riley used the time as a pretext to harass and manipulate Rybolt in violation of the restraining order.

On appeal, Riley contends that: (1) insufficient evidence shows Rybolt had a reasonable apprehension of future abuse, which was required before the court could renew the restraining order; (2) the court failed to properly consider that circumstances had changed since the initial restraining order was entered; (3) the court erroneously modified the parenting plan without considering the best interests of the child under Family Code[3] section 3040; and (4) the modified parenting plan prohibiting him from attending extracurricular activities during Rybolt's parenting time is vague and overbroad. Finding no merit to any of his contentions, we affirm.

## FACTS AND PROCEEDINGS

In summarizing the factual and procedural history of this dispute, both parties have disregarded the rules governing appellate briefs by failing to support numerous factual assertions with citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C).) In other instances, the parties include citations that do not support the factual assertions they make. "Because '[t]here is no duty on this court to search the record for evidence' [citation], [we] *may* disregard any factual contention not supported by a proper citation to the record." (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379; see also *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [appellate court need not consider any matter asserted without appropriate reference to the record].) On the scant record provided, we have done our best to piece together the contentious history of this case.

---

**3**     Undesignated statutory references are to the Family Code.

2

Rybolt and Riley share a minor son together, M. R.  In May 2011, Rybolt sought a domestic violence restraining order against Riley.  After trial, Judge Jaime Román granted the restraining order.  Among other things, the restraining order mandated that Riley stay at least 25 yards, or approximately 75 feet, away from Rybolt.[4]

Judge Román's written statement of decision specifically found that Riley intentionally or recklessly attempted to cause bodily injury to Rybolt, sexually assaulted her, placed her in reasonable apprehension of imminent serious bodily injury, and stalked and threatened her.  The court also found that Riley repeatedly engaged in abuse within the meaning of the Domestic Violence Prevention Act.

During a child custody hearing a year later in June 2012, Judge Kevin Culhane found that Riley still failed to comprehend the nature and gravity of his conduct.[5] According to Judge Culhane, Riley involved a number of third parties, including his family members, in private parenting issues.  The court found that Riley was the source of threatening e-mails Rybolt received from Riley's sister and that his family members had followed her and copied private parenting documents.  "Such controlling and intrusive conduct," in the court's view, "[wa]s fundamentally inconsistent with any finding that the [Family Code section 3044][6] presumption ha[d] been rebutted."

---

[4]     Judge Román's statement of decision and order granting the domestic violence restraining order does not contain the 25-yard limitation, but both parties repeatedly referenced the restraining order's 25-yard restriction in their correspondence and at trial.

[5]     Judge Culhane's order and statement of decision following the custody hearing does not appear in the record, but Riley asked the court to take judicial notice of his statement of decision and the court took judicial notice of its file and quoted extensively from his findings in its order renewing the restraining order.  While Rybolt's brief includes additional purported quotes from Judge Culhane's findings, she provides no citation to the record to support the quoted language.

[6]     Family Code section 3044, subdivision (a) creates a presumption against awarding sole or joint physical custody to the party who the court has found perpetuated domestic

3

Judge Culhane further found that, "[m]ost fundamentally the evidence demonstrates an ongoing course of conduct whereby father attempts to blame multiple third parties, includ[ing] mother, mother[']s boyfriend, other parties, the co-parent counselor, the former lawyer, mediator, and others for the continuance of father[']s own activities." Riley had also "drawn the child into these disputes on a number of occasions."

In January 2014, the court adopted a Family Court Services mediation report that allowed Riley to attend school functions such as back-to-school night.[7] Neither the mediation report nor the court's order is included in the record. It also appears, although it is not entirely clear from the record and the parties do not specify, that the court adopted another mediation report in or about February 2015 that allowed Riley to attend at least half of M. R.'s extracurricular activities. That mediation report and the court's order are not included in the record.

In February 2016, Rybolt filed a request to renew the 2011 restraining order. As previously noted, Rybolt's written request is not included in the record on appeal. Riley contested the renewal. His written response is not included in the record.

Rybolt and Riley both testified at the trial on the renewal request. Rybolt's husband, Joshua McGourty, and Riley's mother, Dawn Riley, also testified.

Rybolt testified as follows: She obtained the initial restraining order in 2011 because Riley had sexually assaulted her, stalked her, and threatened her. Riley also threatened her in and outside of coparenting counseling sessions.

violence against the other party seeking custody of the child within the previous five years.

[7] According to Riley's counsel, the agreement provides in part: "Father shall be enabled to attend school events and functions such as Back-to-School Night. He shall notify the mother [by] e-mail of his intention to attend, and she shall notify him [by] e-mail if she will be accompanied by friend or family member. If she has not been, the father shall arrange a school official to escort the mother to her car following the event."

Under a Family Court Services mediation report adopted by the court, Riley could attend half of M. R.'s extracurricular activities. They would either split the events or they would both attend so long as Riley followed the restraining order, including staying 25 yards away from her. She did not consider the mediation report a modification of the restraining order.

Rybolt described several instances when Riley had violated the restraining order at extracurricular activities and school events. At M. R.'s most recent school open house, for example, Riley stood within 15 feet of Rybolt as he performed with his class. Although she asked him to comply with the restraining order at school events and sports games and practices during her parenting time, he would often stand closer than the order allowed. Rybolt called the police at a baseball game and a swim practice when she felt Riley was violating the restraining order. Riley sometimes got too close during child exchanges and when Rybolt dropped M. R. off at school.

Rybolt would often avoid activities because Riley said he was going to attend, but then later she would learn he did not attend the event. Other times, Riley insisted on attending sports events during Rybolt's parenting time but then failed to take M. R. to games or practices during his own parenting time. Riley would also send his family members, who had threatened and harassed Rybolt in the past, in his place at school events even though he said he was going.

At one point, Riley attended a carnival that occurred during her parenting time. She allowed M. R. to spend some time with Riley at the carnival, but when she told him it was time to go, Riley appeared to try to bribe and manipulate M. R. with tickets and merchandise. She could see M. R. felt stressed and conflicted during the exchange, and she had to walk up to Riley, take her son's hand, and walk away.

Riley also insisted on attending the parent-teacher conference she had scheduled even though they had always done separate conferences due to the restraining order. Riley told her he was unable to schedule separate conferences. She e-mailed the teacher

and confirmed that the teacher had never told Riley he could not have a separate conference, and in fact, that he had actually scheduled a separate conference. Nevertheless, Riley continued to insist on attending Rybolt's conference time. Rybolt was extremely anxious during the conference, believing Riley might walk in at any minute. He did not show up.

In addition to her testimony, Rybolt offered numerous e-mail exchanges between the parties documenting the above-described events as evidence during trial. The court admitted the e-mail exhibits.

Rybolt testified that she is in constant fear of Riley and that she does not feel safe around him. Rybolt explained that part of her fear stemmed from never knowing whether Riley would actually show up to events and violate the restraining order. She said she gets anxious, shaky, and nauseous whenever he is around, and has trouble sleeping. She installed video surveillance at her home and changed all the locks. She also testified that her son is in conflict when she and Riley attend events together, and that he worries about the distress she feels when around Riley. Rybolt's husband, Joshua McGourty, confirmed her adverse physical symptoms when around Riley.

Throughout his testimony, Riley generally denied intending to intimidate or harass Rybolt, and he claimed that her recollections of events were not always accurate. Although he admitted that he came closer than 25 yards to Rybolt during one child exchange, he said his then-girlfriend and now-wife knew about the restraining order but did not know about its 25-yard limitation when she parked behind Rybolt's car. Riley also testified that one of the sheriff's deputies who responded to M. R.'s swim lesson when Rybolt contacted law enforcement told him that he was violating the restraining order, but that the officer knew he was not really doing anything wrong.

According to Riley, he sometimes would not show up to events he planned to attend because he did not want to create a "ruckus" in front of M. R. and he did not "want to stress [M. R.] out mainly." He denied telling Rybolt that he was going to attend a field

6

trip that he later did not attend. He said he never intended to attend the parent-teacher conference Rybolt scheduled, and that she had simply misunderstood that he had scheduled a separate conference on the same day. As for the school carnival, he claimed they agreed they would both attend. He said that while he was playing a game with M. R., Rybolt walked rapidly toward them and roughly grabbed M. R. by the arm. She dragged him away and he was visibly upset.

Sometimes Riley would not take M. R. to practices or games when M. R. was in his care, but he explained that he might have been caught in traffic or stuck at work on such occasions. He disputed an e-mail from Rybolt in which she claimed that M. R. had missed two practices while with him.

Riley testified that he had remarried and was currently attending law school. He had also completed a 52-week anger management course since the initial restraining order was granted. Riley expected to graduate in 2018 and was concerned about having a permanent domestic violence restraining order on his record because it could possibly prevent him from being admitted to the state bar.

On cross-examination, Riley admitted that he had previously worked as a California Highway Patrol Officer but had been dismissed from his law enforcement position for dishonesty. Rybolt also testified on redirect that Riley had submitted false paystubs to the court and testified about them in order to falsify his income at a prior hearing between the parties. The court significantly increased her child support payment after the falsity was discovered.

Riley's mother testified that she attended back-to-school night at her grandson's school. Although Riley initially intended to go, he got caught in traffic and did not make the event. She saw Rybolt as she was leaving. Rybolt did not appear stressed and was joking and laughing with another woman.

After considering the parties' pleadings, the witnesses' testimony, the documentary evidence admitted at trial, and the reporter's transcript, the court granted

7

Rybolt's renewal request. The court found that Rybolt's apprehension of future abuse was genuine and reasonable, that Riley had violated the restraining order on several occasions, that he used extracurricular activities as a pretext to manipulate, control, and disturb Rybolt, and that circumstances had not sufficiently changed to reduce the need for continued protection. The court renewed the restraining order for five years.

The court also found that the February 2015 change to the parenting plan was the source of "much mischief" in the case and was not working. The court therefore ordered that "Mr. Riley may not attend extracurricular activities during Ms. Rybolt's parenting time. Ms. Rybolt can grant specific exemptions to this prohibition, but that shall only be valid if it is in a signed writing or if there is an email from her that explicitly provides for Mr. Riley to attend. Mr. Riley shall be permitted to attend minor's extracurricular activities during his parenting time. He shall not be required to leave if Ms. Rybolt attends such activities even if it is not possible to remain 25 yards away from Ms. Rybolt." Riley timely appealed.

DISCUSSION

I

*Renewal Of Restraining Order*

Riley contends the court erred in renewing the restraining order. He argues that the court misapplied the standards for renewing a domestic violence restraining order under section 6345, and that insufficient evidence showed Rybolt had a reasonable apprehension of future abuse. As a derivative of the latter argument, he claims that although Rybolt may have subjectively feared him, that fear was unreasonable. We disagree.

8

Under the Domestic Violence Prevention Act[8] (the Act), a court may restrain a person to prevent a recurrence of domestic violence upon reasonable proof of past acts of abuse.  (§ 6300.)  "Abuse" means intentionally or recklessly causing or attempting to cause bodily injury, sexual assault, placing a person in reasonable apprehension of imminent serious bodily injury to that person or another, or engaging in behavior that could be enjoined pursuant to section 6320.  (§ 6203, subd. (a)(1)-(4).)  Among other things, a court may enjoin the following under section 6320, subdivision (a):  "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering . . . harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party . . . ."

Section 6345, subdivision (a) provides that a trial court may renew a restraining order "upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. . . ."  When contested, a request to renew a restraining order should not be granted pursuant to section 6345 simply because the requesting party has "a subjective fear the party to be restrained will commit abusive acts in the future." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1288 (*Ritchie*).)  "The 'apprehension' those acts will occur must be 'reasonable.' " (*Ibid.*)  "That is, the court must find the probability of future abuse is sufficient that a reasonable woman (or man, if the protected party is male) in the same circumstances would have a 'reasonable apprehension' such abuse will occur unless the court issues a protective order." (*Ibid.*)

---

[8]     Family Code section 6200 et seq.

An imminent and present danger of abuse is not required, however. (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1288.) "In other words, under this objective test, '[a] trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a "reasonable apprehension" of future abuse. . . . [T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable.' " (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 332-333.)

In evaluating whether the requesting party has a reasonable apprehension of future abuse, "the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.) While the trial court may look behind the initial order itself to the evidence and findings on which the order was based in appraising the risk of future abuse, the restrained party is not permitted "to challenge the truth of the evidence and findings underlying the initial order." (*Id.* at p. 1290.)

Significant changes in the circumstances surrounding the events justifying the initial protective order may also be relevant in evaluating the protected party's apprehension of future abuse. (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.) "For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?" (*Ibid.*) The seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interfering with job opportunities are also relevant considerations. (*Ibid.*)

10

"We review the trial court's ruling under an abuse of discretion standard, to determine ' "whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Lister v. Bowen*, *supra*, 215 Cal.App.4th at p. 333.)  With these principles in mind, we turn to Riley's contention that the court erred in renewing the protective order in this case.

Riley first contends that the court erred in applying the factors discussed in *Ritchie* in determining whether to renew the restraining order.  Not so.  The record shows the court properly considered the facts and circumstances underlying the initial restraining order, violations of the restraining order, whether circumstances had changed, and the relative burden on Riley if the restraining order was renewed.

Riley, as the court noted, had been restrained in 2011 after he intentionally or recklessly attempted to cause bodily injury to Rybolt, sexually assaulted her, placed her in reasonable apprehension of imminent serious bodily injury, stalked and threatened her, and repeatedly engaged in abusive behavior toward her.  The original restraining order was thus based on findings of serious physical, emotional, and mental abuse.  As *Ritchie* recognized, the facts and findings underlying the original restraining order "often will be enough in themselves to provide the necessary proof" that a protected party's apprehension of future abuse is reasonable.  (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.) That is true here.

The fact that Rybolt did not allege an apprehension of future physical abuse as Riley argues is of no moment and does not mean that the court could not evaluate whether Rybolt's apprehension of future abuse was reasonable.  Fear of physical abuse is not required to renew a restraining order. (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1464 ["there is no requirement that the party requesting a renewal have a fear of *physical* abuse"].)  The Act covers a myriad of conduct beyond mere physical abuse. Under section 6320, subdivision (a) for example, courts may enjoin stalking, threatening,

harassing, telephoning, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party. The court could reasonably conclude that Riley's behavior, while not physically threatening, sufficiently disturbed Rybolt's peace and emotional well-being that her apprehension of such future abuse was reasonable.

Riley's contention that there was no evidence that he actually violated the restraining order is both legally irrelevant and factually inaccurate. Section 6345, subdivision (a) expressly states that a restraining order "may be renewed, upon the request of a party . . . without a showing of any further abuse since the issuance of the original order . . . ." *Ritchie* explained: "It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order. If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1284.)

The record, moreover, is replete with evidence showing Riley in fact violated the restraining order on multiple occasions as the court so found. Riley himself testified that his wife parked their car closer than 25 yards to Rybolt during a child exchange and that a sheriff's deputy told him he was in violation of the restraining order during a swim practice. Rybolt also testified to numerous occasions during school activities and sporting events that Riley violated the restraining order's 25-yard stay-away provision. The court found Rybolt's testimony particularly credible and expressly rejected Riley's testimony about the same events as not credible.

Riley simply fails to accept the trial court's factual finding that he violated the restraining order. He also fails to comprehend the barrier credibility findings present on appeal. We do not substitute our opinion as to the credibility of the witnesses for that of the trial court. (*Romero v. Eustace* (1950) 101 Cal.App.2d 253, 254.) And we are bound to " 'resolve all factual conflicts and questions of credibility in favor of the prevailing

12

party and indulge all reasonable inferences to support the trial court's order. [Citation.]' [Citation.]" (*Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 849-850.)

We also reject Riley's contention that at most the evidence demonstrated Rybolt had a subjective but unreasonable fear of him. Although he claims her fear is not based on any material facts, he fails to acknowledge the facts underlying the initial restraining order and the evidence showing he violated the restraining order after it was issued. "It almost goes without saying that any violation of a restraining order is very serious, and gives very significant support for renewal of a restraining order." (*Lister v. Bowen*, *supra*, 215 Cal.App.4th at p. 335; see also *Avalos v. Perez* (2011) 196 Cal.App.4th 773, 775-777 [although there had been no contact during the two-year term of the restraining order, a visit by the restrained party's friend to the protected party's restaurant workplace to deliver " 'greetings' " from the restrained party, along with the initial mental and physical abuse, "amply" supported the protected party's continued fear].)

Finally, the record belies Riley's contention that the court failed to consider that he had started law school or successfully completed a 52-week anger management course when evaluating whether changed circumstances militated against renewing the restraining order. The court heard and considered testimony and documentary evidence on both issues. The court's order also specifically recognized that, "[Riley] has taken anger management classes . . . ." when discussing whether circumstances had changed since the initial restraining order.

The order also implicitly acknowledges Riley's future plans to become a lawyer in the context of considering the potential burden a renewed restraining order would have on him. Because he had already been dismissed from the California Highway Patrol for dishonesty, the court found it would be difficult to discern any negative consequences from the renewal. When considered in context and in light of Riley's testimony that he was attending law school and that a renewed restraining order might affect his ability to

13

gain admittance to the state bar, the court's statement shows it did consider Riley's law school attendance in its decision but did not find the evidence compelling.

The trial court was within its discretion to conclude that the totality of the evidence indicated it was more probable than not there was a sufficient risk of future abuse to find that Rybolt's apprehension was genuine and reasonable. The court did not err in renewing the restraining order.

## II

### *Modification Of Parenting Plan*

Riley contends the court twice erred in modifying the parenting plan to prevent him from attending extracurricular activities during Rybolt's parenting time. First, he argues the court did not consider the best interests of the child when changing custody. Second, he contends the order is vague and overbroad. He is wrong.

In ruling on the request to renew the restraining order, the court found that "much of the mischief ha[d] been caused under the cover of the February 2015 change to the parenting plan," which apparently allowed Riley to attend M. R.'s extracurricular activities. The court therefore modified the order to prohibit Riley from attending extracurricular activities during Rybolt's parenting time unless Rybolt granted an express written exemption for him to attend. The court also ordered that Riley was permitted to attend his son's extracurricular activities during his parenting time, and that he did not have to leave if Rybolt attended such activities even if it was not possible to remain 25 yards away from her.

At the outset, we note that in modifying the parenting plan, the court did not change the custody arrangement between the parties. The order merely prohibits Riley from attending extracurricular activities during *Rybolt's parenting time*. In other words, Rybolt already had custody of M. R. during those periods. The renewal order did not change that.

14

We review custody and visitation orders under the deferential abuse of discretion test. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) "The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*Ibid.*) We uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. (*Ibid.*)

There was no abuse of discretion. After extensive testimony from both parents, the trial court concluded the current visitation order was not working for the family. In doing so, the court implicitly weighed the health and safety of M. R. and other family members, including Rybolt, as permitted under the relevant statutory provisions.

Evidence from both parties showed that M. R. often suffered distress when both parents attended various extracurricular events. In one e-mail, for example, Riley asked Rybolt to confirm that she and McGourty would not attend practices or games during his parenting time because "it truly makes [M. R.] uncomfortable." Riley also testified that he would sometimes not show up to events because he did not want to "stress [M. R.] out mainly."

Based on this evidence, its findings that Riley had violated the domestic violence restraining order, and that he had used the extracurricular activities as a pretext to continue harassing and controlling Rybolt -- conduct that qualified as abuse within the meaning of the domestic violence statutes (§§ 6203, 6320), the court could reasonably conclude it was in the best interest of M. R. that Riley not attend extracurricular events during Rybolt's parenting time. After carefully reviewing the record and the court's detailed ruling, the court did not abuse its discretion in modifying the visitation plan.

Riley next argues that it is difficult if not impossible for him to know what constitutes an extracurricular activity or attendance at such an activity. He contends the court's order is thus vague and ambiguous. We disagree.

15

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' [Citation.] The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) "In deciding the adequacy of any notice afforded by those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' " (*Ibid.*)

The term "extracurricular activities" is generally understood to include all voluntary activities that are not part of the school curriculum. (See, e.g., Ed. Code, § 35160.5, subd. (a)(2) [an extracurricular activity is not part of the regular school curriculum, is not graded, does not offer credit, and does not take place during classroom time]; Random House Webster's College Dict. (1997) p. 462 [defining "extracurricular" as "outside the regular program of courses" and "outside one's regular work or responsibilities"].) The word "attend" means "to be present at," and the word "attendance" means "the act of attending." (Random House Webster's College Dict., *supra*, at pp. 85, 86.) The terms have common sense meanings.

Nothing in the record shows Riley complained that the original order allowing him to attend extracurricular activities was vague, which implies that Riley had no problem comprehending the meaning of the terms when the court changed the parenting plan in February 2015 to allow such conduct. The parties, moreover, include a specific section in their parenting updates to one another entitled "Extra Curricular Activities." There, they discuss attending M. R.'s sporting events such as baseball and swimming. When considered in context, then, the phrases "extracurricular activities" and "attendance" at such activities are not vague.

16

Riley's claim that the court's order is overbroad is likewise without merit. While it is true that a restriction that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890), we conclude the court's order is narrowly tailored given the specific circumstances of this case.

Although Riley claims the order may prevent him from attending parent-youth baseball meetings, parent baseball clubs, or the parent teacher association, nothing in the record shows such activities fall exclusively on Rybolt's parenting time. Under the court's order, Riley is free to participate in such activities on his parenting time even if that means he cannot stay at least 25 yards away from Rybolt.

Riley's assertion that less intrusive alternative means exist to afford Rybolt protection, such as requiring him to maintain the 25-yard restriction at any extracurricular events, is not persuasive. The court specifically found that Riley repeatedly violated the 25-yard restriction "even though it would have been easy to do at extracurricular events." Substantial evidence supports the court's finding. Given Riley's conduct, the "less intrusive" 25-yard restriction was no longer a viable means of affording Rybolt protection from Riley's abusive conduct.

The court's order modifying the parenting plan to prohibit Riley from attending extracurricular activities during Rybolt's parenting time unless she gives him written permission is not vague and overbroad. Nor did the court abuse its discretion in modifying the order because it implicitly considered M. R.'s best interest.

17

DISPOSITION

The order renewing the domestic violence restraining order and modifying the parenting plan is affirmed.  Respondent shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


/s/
Robie, Acting P. J.


We concur:


/s/
Butz, J.


/s/
Mauro, J.

18

Filed 2/26/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| COURTNEY E. RYBOLT, | C082857 |
| Plaintiff and Respondent, | (Super. Ct. No. 10FL05692) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| JAMES E. RILEY IV, | |
| Defendant and Appellant. | |

THE COURT:

The opinion of this court filed January 31, 2018, was not certified for publication in the Official Reports.  For good cause it now appears the opinion should be published in its entirety in the Official Reports and it is so ordered.

BY THE COURT:

 /s/
Robie, Acting P. J.

 /s/
Butz, J.

 /s/
Mauro, J.

1

APPEAL from a judgment of the Superior Court of Sacramento County, Jennifer K. Rockwell, Judge. Affirmed.

Law Office of Christie Mitchell and Christie Mitchell, for Plaintiff and Respondent.

James Riley, in pro. per., for Defendant and Appellant.