Filed 5/9/23 Certified for Publication 6/2/23 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| MICHAEL M.,<br><br>        Respondent,<br><br>        v.<br><br>ROBIN J.,<br><br>        Appellant. | D080707<br><br><br>(Super. Ct. No. 17FL014460E) |

APPEAL from an order of the Superior Court of San Diego County, Shereen J. Charlick, Judge.  Reversed and remanded with directions.

Covington & Burling, Matthew Q. Verdin, Wendy L. Feng; Family Violence Appellate Project, Jodi Lewis, Shuray Ghorishi, Jennafer D. Wagner, and Eric C. Smith for Appellant.

No appearance for respondent.

Robin J. appeals from an order denying her request to renew a domestic violence restraining order (DVRO) against Michael M., the father of

their two children.[1]  (Fam. Code, § 6345, subd. (a).)  We conclude that the trial court misapplied the law in denying Robin's renewal request, and that Robin established a reasonable apprehension of future abuse.  Accordingly, we reverse and remand the matter to the trial court with instructions to grant the renewal request and decide whether the DVRO should be renewed for five or more years, or permanently.  (*Ibid.*)

FACTUAL AND PROCEDURAL BACKGROUND

*A.  Incident of October 5, 2017*

On October 5, 2017, Robin and Michael had been dating for a year and a half and had a one-month-old baby, M.M.  They got into an argument and Robin threatened to call law enforcement.  Michael grabbed Robin's cell phone out of her hand, threw it, and started to leave the house.  When Robin followed him to the door with the baby in her arms, Michael turned around, grabbed Robin, and bit her ear.

Robin called law enforcement.  The deputy sheriffs who responded observed significant redness to her right ear.  Robin also showed them photos of a bruise she said she had sustained on her arm from an unreported incident of domestic violence that occurred the prior week.  The deputy sheriffs arrested Michael.

*B.  Incident of September 2, 2018*

By September 2018, Robin and Michael were separated and she was five months pregnant with their second child.

On September 2, 2018, during a meeting at a public park for Robin to take custody of one-year-old M.M., Michael shoved Robin aside and forced her

---

[1]    We grant Robin's motion to use pseudonyms in this opinion.  We refer to the parties by their first name and last initial and their minor children by their initials.

2

car door open after she had put M.M. in the car. Michael grabbed M.M. and walked away with her. Law enforcement arrested Michael for domestic violence.

*C. DVRO*

Two days after the incident of September 2, 2018, Robin filed a pro per request for a DVRO against Michael in their pending family law case. In a sworn declaration, she stated that she had previously asked for a DVRO in July 2018, in which she "documented all forms and history of abuse." After the court denied her prior DVRO request, however, "the abuse continuously worsened . . . from provoking texts, manipulation, threats and eventually escalating to the assault which occurred over the weekend." Robin stated that "[w]ith everything that has happened I am extremely scared and fearful for the safety of [M.M.], myself and my unborn child as of now I am currently 5 months pregnant."

After a hearing, the court granted a three-year DVRO on September 21, 2018. The DVRO included a stay-away order requiring Michael to stay at least 100 yards away from Robin. It also included personal conduct orders prohibiting Michael from harassing, attacking, striking, threatening, or assaulting Robin, or contacting Robin directly or indirectly by any means, including electronic. The stay-away and personal conduct orders included an exception for brief and peaceful contact as required for court-ordered visitation of children.

The DVRO also had an attached child custody and visitation order that was identified as "part of" the DVRO. The attached order gave legal custody of M.M. to Robin and physical custody to Robin and Michael, with Michael having exclusive custody of M.M. every other weekend. The order also directed the parties "to enroll in Talking Parents" and ordered "that all

nonemergency communication between the parties take place on this email platform."

*D. Incident of February 26, 2019*

Robin gave birth to the parties' second daughter, N.M., in late January 2019. On February 26, 2019, Robin and Michael got into another argument at a residence in Ramona.[2] Michael threw her to the ground about 10 times, strangled her from behind, pulled a knife, and ran the knife across her neck—all in the presence of one-year-old M.M. while Robin was holding one-month-old N.M. The knife scraped Robin's neck but did not cut her. Robin struggled to breathe throughout the assault. Michael also threatened to kill Robin. Robin believed that Michael was trying to kill her and that she would die in front of her daughters. M.M. screamed and cried during the incident.

When law enforcement arrived, Michael fled the scene. Sheriff's deputies observed that Robin had many abrasions and bruises on her neck and chest and a red line across her neck. They collected a knife from the scene that Robin identified as the one Michael had used.

Robin requested and the court issued an emergency protective order (EPO). The EPO directed Michael to move out of the Ramona residence and stay away from it and Robin.

The next day, law enforcement arrested Michael after he returned to the Ramona residence. In a back pocket, they found another knife identical to the one they had recovered at the scene. After they served Michael with

---

[2]     The police report identified Michael, his mother, M.M., and N.M. as residents of the Ramona residence and Robin as a resident at a different address in Fallbrook. However, an emergency protective order issued the next day stated that the protected persons (Robin, M.M., and N.M.) lived with the person to be restrained (Michael) and ordered Michael to vacate the Ramona residence.

the EPO, he made numerous statements that he intended to violate the EPO by returning to the residence once he was released and did not care about the ramifications.

### E. Robin's Request for Renewal of DVRO and Michael's Response

On September 17, 2021, four days before the DVRO was set to expire, Robin filed a pro per request to renew the DVRO. The court set a hearing for October 8, 2021 and issued a notice and order extending the existing DVRO until the end of the hearing.[3]

Robin filed a declaration and supporting exhibits in support of her renewal request. The declaration and attached police reports described the domestic violence incidents of October 5, 2017, September 2, 2018, and February 26, 2019.

In her declaration, Robin stated that Michael constantly texted her, and she provided a copy of his most recent text on October 2, 2021, which stated as follows: "I think it's absolutely wrong what you are doing to the girls you constantly call cws even tho you are the corrupt one trying to pull bs it's absolutely not cool of you trying to pull that on our girls . . . you are one sick individual and should be checked[.] It's very unfortunate you are doing this to our daughters." Robin felt threatened by this text and reported it to law enforcement.

Robin also stated that after the issuance of the DVRO, she had moved to a new address and been accepted to the Safe at Home program to keep her

---

[3]    At the time, rule 8 of the Judicial Council's Emergency Rules Related to COVID-19 provided: "Upon the filing of a request to renew a restraining order after hearing that is set to expire during the state of emergency related to the COVID-19 pandemic, the current restraining order after hearing must remain in effect until a hearing on the renewal can occur, for up to 90 days from the date of expiration." (Cal. Rules of Court, Appx. I, Emergency rule 8(b)(4) [effective April 2020 through June 2022].)

address confidential. In July 2021, the Secretary of State sent Michael a letter notifying him that her office had been designated as the agent for service of process on Robin and providing a post office box address for service by mail. On September 9, 2021, however, Michael's attorney served Robin by mail with papers at her new confidential address. As a result, Robin was "terrified" that Michael knew her new address. She stated: "[I am] literally scared to death of this guy and what he has put me and the children through. Now I'm living in fear with him knowing where I live even though I went to great lengths to provide my family with a safe haven to call home."

Robin further asserted that M.M. had to be taken to the emergency room in August 2021 and September 2021 "because she was reporting her father hit her and she had bruises." Robin attached hospital records showing that M.M. had tenderness to her right knee as a result of an injury that allegedly occurred while she was with Michael on September 19, 2021. The hospital records quoted Robin as saying "that [M.M.] told her that 'she was bad and daddy hit my knee.'"

Finally, Robin submitted evidence that Michael was delinquent in child support payments totaling about $8,000. She asserted that this was "causing a severe financial strain."

Michael filed a declaration in opposition to the renewal request. Without giving any specifics, Michael asserted that Robin had "conveniently ignored significant events and issues" and "exaggerated virtually every incident she describes in her declaration." He asserted that Robin's "primary motivation" for seeking a renewal of the DVRO was "to 'punish me' for my alleged nonpayment of child support." Michael also stated that the domestic violence incidents "occurred years ago" and "[t]here have been no incidents

6

justifying or supporting the need for the existence of a [DVRO] in almost 3 years."

F. *Hearing and Ruling on Renewal Request*

The parties' family law case was reassigned to Judge Shereen Charlick in January 2021. Between January and September 2021, before the hearing on Robin's DVRO renewal request, Judge Charlick presided over four ex parte hearings regarding child custody and visitation. She also presided over the October 8, 2021 hearing on the renewal request.

Robin represented herself at the renewal hearing and Michael appeared with counsel. The court began by asking Robin "why *recent events* have you continuing to be afraid of [Michael]." Robin responded by mentioning Michael's violations of the DVRO and the fact that he had somehow obtained her confidential address.

The court told Robin, "the address doesn't concern me as much as *how did he violate the order recently*." Robin testified that Michael had violated the DVRO by texting her and calling her, including the text of October 2, 2021 six days before the hearing. She also referred to his failure to pay child support, the "pretty severe attack" he committed on February 26, 2019, and Michael's statements to law enforcement that he intended to violate the EPO and did not care about the ramifications. The only question the court asked Robin about the February 2019 incident was, "This is from 2019?"

The court then questioned whether Robin was seeking renewal of the DVRO as retaliation against Michael for seeking child custody. The court stated: "I have seen the two of you in court on multiple competing ex-parties [*sic*] where you were each trying to get custody from each other. And I noted that the last time you were here and you were -- actually, he tried to take

7

custody from you, you filed this renewal request the very next day after he didn't obtain custody because of your DUI . . . ."

Robin asserted that she had filed the renewal request when she did because she saw her confidential address listed on Michael's papers served September 9, 2021. She explained, "as soon as I saw that, I cannot allow this restraining order to lapse without seeking the protection, you know, to keep him away from me and my family . . . ." She stated: "I am just asking for you to understand my fear of this person, and, you know, I don't text him. He continues to text me directly. There is a huge history of every way that he abused me financially, emotionally, physically." Robin also mentioned the "child abuse" that "disturbs my peace" and "causes fear of future abuse to both me and the kids." According to Robin, "the fear that I have of his man is real . . . ."

In response, Michael's counsel argued that Robin's renewal request was "clear retaliation for [Michael] seeking to change custody when [Robin] was arrested for driving under the influence with children in the car." He also asserted that "all of the points that she raises that might fall under violations of the Domestic Violence Protection Act occurred years ago." According to defense counsel, Robin was "upset" that Michael "sought custody and brought her DUI to light," "that he got her address," and "that he is not paying child support," but defense counsel argued that none of this was a basis for renewing the DVRO.

Robin again argued that Michael was violating the DVRO by continuing to text her directly. She also noted that in the incident of February 2019, "my life was in danger" because "he put a knife to my throat while his children were present."

Michael did not testify at the hearing, other than to answer one question from the court about whether he had been convicted of the February 2019 assault with a knife. Michael responded, "All of the ones she has -- three -- I have been arrested three times and not one time have I been convicted." The court did not ask Michael any other questions about the February 2019 incident, not even to inquire whether he had in fact held a knife to Robin's throat. Robin asserted that Michael had not been convicted only because she had declined to cooperate with prosecutors.

The trial court then denied Robin's request for renewal from the bench. The court ruled as follows:

> "So, at this time, . . . I am denying your renewal request. I do not find that you need this protection anymore. I understand you had it in the past. I understand there was a great deal of difficulty when you and [Michael] had an ongoing relationship. I find that in the past several years, other than that one text message, which it's not necessarily custody related, and it was not necessary, but I'm exercising my discretion to find it really isn't a violation in this court's view. I do not find that your fear is reasonable. I do find that there is a history of retaliatory behavior between the two of you as to custody, as to child support.
>
> "Of course, if there were any future incidents that could constitute abuse, [Michael] is on notice and I would expect that [his counsel] has given him similar warnings and advice . . . .
>
> "I am finding that your fear isn't credible because I find there are other circumstances that prompted this renewal, and I am aware of them. With the history of this case, I am denying this request.
>
> "[Michael] is on notice that were there really to be any event that he precipitates that could cause you reasonable fear, you will take appropriate action. So I'm denying the request. I find you have not met your burden of

9

demonstrating reasonable fear under the totality of the circumstances in light of the history. I find that this -- that your renewal request was prompted by other actions that [Michael] took with respect to custody and the DUI, so I'm denying this."

## DISCUSSION

### A. *Standard of Review*

We generally review an order denying a request to renew a DVRO for abuse of discretion. (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 509 (*Ashby*).) But the question whether the trial court applied the correct legal standard in exercising its discretion is a question of law requiring de novo review. (*Ibid.*) If the court's decision to deny a renewal request is influenced by an erroneous understanding of the law, the court has not properly exercised its discretion under the law. (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 (*Eneaji*).)

### B. *Governing Law*

Family Code section 6345, subdivision (a) provides that a DVRO shall have an initial duration not exceeding five years, but "may be renewed, upon the request of a party, either for five or more years, or permanently, at the discretion of the court, *without a showing of further abuse since the issuance of the original order.* . . . The request for renewal may be brought at any time within the three months before the expiration of the orders." (Italics added.)

The legal standard for renewal of a DVRO is whether the protected party entertains a reasonable apprehension of future abuse. (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290 (*Ritchie*).) "[T]his does not mean the court must find it is more likely than not that abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension genuine and reasonable." (*Ibid.*) An

10

imminent and present danger of abuse is not required; there must only be a reasonable apprehension that "abuse will occur at some time in the future if the protective order is allowed to expire." (*Id*. at p. 1288.)

For a DVRO renewal, the protected party need not show a reasonable apprehension of future *physical* abuse. (*Eneaji, supra*, 229 Cal.App.4th at p. 1464.) The statute defines "abuse" broadly to include any behavior that could be enjoined under Family Code section 6320, such as harassing or disturbing the peace of the other party. (Fam. Code, § 6203, subd. (a); *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 536.) This definition encompasses "a multitude of behaviors" that do "not involve any physical injury or assaultive acts." (*Eneaji*, at p. 1464.) Thus, "there is no requirement that the party requesting a renewal have a fear of *physical* abuse." (*Ibid*.; accord *Rybolt v. Riley* (2018) 20 Cal.App.5th 864, 875 (*Rybolt*).)

"[Family Code] [s]ection 6345 makes it unnecessary for the protected party to introduce or the court to consider actual acts of abuse the restrained party committed after the original order went into effect." (*Ritchie, supra*, 115 Cal.App.4th at p. 1284.) *Ritchie* explained: "It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order. If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order." (*Ibid*.)

In evaluating whether the requesting party has a reasonable apprehension of future abuse, the trial court ordinarily should consider the evidence and findings on which the initial DVRO was based. (*Ritchie, supra*, 115 Cal.App.4th at p. 1290.) "[T]he underlying findings and facts supporting

11

that order often will be enough in themselves to provide the necessary proof to satisfy that test." (*Id*. at p. 1291.) "Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial protective order. For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?" (*Ibid*.) "Also relevant are the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interference with job opportunities." (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333 (*Lister*).)

A DVRO renewal may not be denied solely on the ground that no additional abuse has occurred since the issuance of the original DVRO. In *Eneaji*, for example, the Court of Appeal ruled that "the trial court erred in concluding that the denial was appropriate because nothing happened in the three years since the restraining order." (*Eneaji*, *supra*, 229 Cal.App.4th at p. 1464.) The court reasoned that the trial court's ruling conflicted with *Ritchie* and Family Code section 6345, subdivision (a). (*Eneaji*, at p. 1464.) "Thus, the trial court's conclusion that the absence of further abuse in the three-year period was a sufficient basis for denying renewal is not supported by the law." (*Ibid*.)

"The key consideration for the court is not the type or timing of abuse, but whether the protected party has a reasonable fear of future abuse." (*Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 397 (*Perez*) [following *Eneaji* in ruling that the trial court had similarly erred by denying a request for renewal of a DVRO on the ground that there was no evidence of further abuse after its issuance].)

C. *Trial Court's Misapplication of Law*

Robin contends that the trial court applied the wrong legal standard to the renewal request and erroneously inferred a retaliatory motive solely from the timing of her request. We agree that the trial court's ruling was prejudicially influenced by a misunderstanding of the law in several respects.

First and foremost, the trial court erred by requiring a showing of recent abuse or a recent violation of the DVRO. From the outset of the hearing, the trial court quizzed Robin on what "*recent* events have you continuing to be afraid" and "how did [Michael] violate the order *recently*." In its final ruling, the court found that Robin's fear was not objectively reasonable because there had been no violation of the DVRO "in the past several years, other than that one text message" of October 2, 2021 (which the court decided "really isn't a violation"). As we have discussed, however, a showing of recent abuse is not required to demonstrate a reasonable apprehension of future abuse. (*Perez*, *supra*, 1 Cal.App.5th at p. 397; *Eneaji*, *supra*, 229 Cal.App.4th at p. 1464.)

The trial court's mistaken insistence on evidence of recent abuse caused it to give no apparent consideration to either the abuse preceding the 2018 DVRO or the subsequent domestic violence incident of February 2019. As noted, a trial court ruling on a renewal request should consider the evidence and findings on which the original DVRO was based, which will often be enough in themselves to support a renewal. (*Ritchie*, *supra*, 115 Cal.App.4th at pp. 1290–1291.) Here, Robin presented evidence of two different domestic violence incidents that occurred before the issuance of the DVRO: one in October 2017 when she was holding one-month-old M.M. and another in September 2018 when she was five months pregnant with N.M. and attempting to exchange custody of one-year-old M.M. By requiring a showing

13

of more recent abuse and failing to analyze whether the original abuse was sufficient, the trial court misapplied the law.

The trial court's restrictive focus on recent events also caused it to disregard Michael's assault on Robin with a knife in February 2019, five months *after* the DVRO was issued. "It almost goes without saying that any violation of a restraining order is very serious, and gives very significant support for renewal of a restraining order." (*Lister*, *supra*, 215 Cal.App.4th at p. 335; accord *Rybolt*, *supra*, 20 Cal.App.5th at p. 876.) A violation involving a knife to the victim's throat is particularly disturbing. Such an incident could reasonably be expected to give rise to a long-lasting fear of the perpetrator that could continue for many years. Yet the trial court found it unnecessary to consider anything "other than that one text message" of October 2, 2021 because it deemed everything else to be too remote in time.

Second, the trial court erred by "exercising [its] discretion to find" that Michael's text of October 2, 2021 "really isn't a violation in this court's view." This text—which accused Robin of being "corrupt" and "sick"—was a clear violation of the DVRO because it did not relate to court-ordered visitation and it was nonemergency communication conducted outside the Talking Parents platform. The trial court had no "discretion" to treat an unquestionable violation of the DVRO as if it were not "really" a violation. (See *Perez*, *supra*, 1 Cal.App.5th at pp. 398–399 [trial court erred by finding that father's calls and texts to mother in violation of DVRO did not constitute continuing abuse under the statute]; *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 603 ["A knowing violation of a DVRO cannot be characterized 'as a de minimis and technical violation.' "].)

Finally, the trial court erred by inferring a retaliatory motive from the mere timing of Robin's renewal request—and rejecting her claim of genuine

14

fear on that basis alone. The DVRO statute *required* Robin to file her renewal request within three months before the DVRO's expiration. (Fam. Code, § 6345, subd. (a).) She filed her renewal request within this statutory window period, four days before the DVRO was set to expire. If Robin had filed her renewal request earlier, while the parties were still litigating Michael's application for emergency child custody orders, she could well have been accused of doing so for strategic purposes to influence the custody dispute. Considering the totality of the record, the mere fact that Robin waited to file her renewal request until after the court had ruled on Michael's custody request is not sufficient to support the trial court's finding of a retaliatory motive. And even if it were, the mere existence of a retaliatory motive still would not negate the compelling evidence that Robin had a reasonable basis to fear Michael. Anger and fear are not mutually exclusive; they often go hand in hand.

    D.    *Reasonable Apprehension of Future Abuse*

Having determined that the trial court misapplied the law, we must now decide on the appropriate remedy. In some cases when appellate courts have reversed orders denying renewal of a DVRO, they have remanded for the trial court to reconsider the renewal request. (See, e.g., *Eneaji*, *supra*, 229 Cal.App.4th at p. 1465; *N.T. v. H.T.*, *supra*, 34 Cal.App.5th at p. 603.) In others, however, appellate courts have ordered a renewal of the DVRO and concluded as a matter of law that the record demonstrates a reasonable apprehension of future abuse. (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 562 (*Cueto*); *Perez*, *supra*, 1 Cal.App.5th at pp. 398, 401.)

We conclude that the latter cases are controlling here. In *Cueto*, the trial court issued a two-year DVRO in 2012 based on evidence of physical abuse perpetrated by a father (Dozier) against the mother (Cueto). (*Cueto*,

15

*supra*, 241 Cal.App.4th at pp. 553–555.)  In 2014, before the DVRO expired, Cueto filed a request to renew it based in part on evidence that Dozier had twice violated the order by driving past her home, which Dozier denied. (*Id*. at pp. 555–556.)  Dozier also denied any history of abuse or violence. (*Id*. at pp. 557–558.)  The trial court ultimately denied the renewal request, finding that Dozier had not driven by Cueto's house or committed any violation of the DVRO, and that Cueto did not show a reasonable apprehension of physical or mental abuse.  (*Id*. at p. 558.)

On review, the Court of Appeal concluded that the trial court had applied the correct legal standard, but had still "abused its discretion in finding that Cueto had not demonstrated a reasonable apprehension of future abuse."  (*Cueto, supra*, 241 Cal.App.4th at p. 562.)  The court reasoned that "[e]ach factor articulated by the court in *Ritchie* supported renewal of the restraining order."  (*Ibid*.)  "First, Cueto obtained the initial restraining order after a violent incident at the baseball game in April 2012 [in which Dozier grabbed Cueto and tried to punch her] and evidence of a troubling history of physical abuse, including [Cueto] being punched in the face in 2002, and threatened on two occasions in 2010 and 2011."  (*Ibid*.)  "Second, there is nothing in the record to suggest that circumstances have changed and that Dozier has 'moved on with [his] li[fe] so far that the opportunity and likelihood of future abuse has diminished.' "  (*Ibid*.)  "Further we are troubled by the comments the trial court made to Dozier at the conclusion of the hearing after *denying* the application to renew the protective order . . . . These comments suggest that the trial court believed there was a need to admonish Dozier from the bench that he must continue to stay away and have no contact with Cueto, but without giving Cueto the legal protection of a restraining order."  (*Ibid*.)

16

All three of these factors (and more) are present here as well. First, Robin presented evidence of a history of physical abuse before the DVRO was issued, including incidents that occurred in the presence of their young daughter M.M. and when Robin was five months pregnant with N.M. Worse yet, Michael's violence escalated after the DVRO was issued, when he threw Robin to the ground 10 times, strangled her, threatened to kill her, and held a knife to her throat—all while she was holding their one-month-old daughter and in the presence of their one-year-old daughter. This egregious violation of the DVRO makes this case even worse than *Cueto*—in which the Court of Appeal did not disturb the trial court's finding that there was *no* violation of the DVRO. Thus, the "seriousness and degree of risk" factor (including "whether it involves potential physical abuse") strongly supports a renewal of the DVRO. (*Lister*, *supra*, 215 Cal.App.4th at p. 333.)

Second, nothing in the record suggests that Michael had moved on with his life. On the contrary, his hostile text of October 2, 2021 (the week before the renewal hearing) demonstrated that he was still consumed with anger against Robin. As Robin explained, she felt threatened by this text. Given the prior history of domestic violence, it was reasonable for Robin to feel apprehensive for her safety as a result of Michael's hostile text in violation of the DVRO. (*Perez, supra*, 1 Cal.App.5th at p. 399.) This additional violation of the DVRO the week before the renewal hearing also makes this case a stronger one for renewal than *Cueto*. (See also *Ashby, supra*, 68 Cal.App.5th at p. 517 [former husband's "noncompliance with court orders further illustrates he has not moved on and the power and control dynamic of the abusive relationship is ongoing"].)

Third, the trial court found it necessary to warn Michael when it denied Robin's renewal request. The court stated: "Of course, if there were any

17

future incidents that could constitute abuse, [Michael] is on notice and I would expect that [his counsel] has given him similar warnings and advice . . . .  [Michael] is on notice that were there really to be any event that he precipitates that could cause [Robin] reasonable fear, [Robin] will take appropriate action."  As in *Cueto*, these comments suggest that the trial court believed there was a need to admonish Michael, "but without giving [Robin] the legal protection of a restraining order."  (*Cueto*, *supra*, 241 Cal.App.4th at p. 562.)  Thus, all the factors cited in *Cueto* likewise establish that Robin had a reasonable apprehension of future abuse.

In addition, Robin's unrefuted evidence that Michael hit and injured M.M. shortly before the renewal hearing further demonstrates that she had a reasonable apprehension of future abuse.  (*Perez*, *supra*, 1 Cal.App.5th at pp. 400–401 [holding that father's abuse of the couple's children also constituted abuse of mother because it "destroyed [her] emotional calm and made her fear for her safety and the safety of her children"].)  As Robin explained, this "disturbs my peace and it causes fear of future abuse to both me and the kids."  Based on the totality of the circumstances, we conclude that Robin established a reasonable apprehension of future abuse and is therefore entitled to a renewal of the DVRO.

## DISPOSITION

The order denying Robin's request for renewal of the DVRO is reversed and remanded with instructions to grant the renewal request.  On remand, the trial court is instructed to decide in the first instance whether the DVRO

18

should be renewed for five years or more, or permanently.  Robin is awarded her costs on appeal.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.

Filed 6/2/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL M., | D080707 |
| Respondent, | |
| v. | (Super. Ct. No. 17FL014460E) |
| ROBIN J., | |
| Appellant. | |

THE COURT:

The opinion in this case filed May 9, 2023, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties