Filed 1/25/24  Ebbing v. Connors CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ANDREA EBBING, | D080537 |
| Appellant, | |
| v. | (Super. Ct. Nos. 21FL004748C & 21FDV01613C) |
| JAMES CONNORS, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Paula S. Rosenstein, Judge.  Affirmed.

Andrea Ebbing, in pro. per., for Appellant.

James Connors, in pro. per., for Respondent.

Andrea Ebbing (Andrea) appeals a June 1, 2022 custody order, awarding the parties joint custody of their two minor children and determining that the children shall primarily reside with their father in Massachusetts.  She challenges the court's application of Family Code section

3044,[1] the validity of the record, opposing counsel's conduct, and the evidentiary basis for the custody ruling. Based largely on the limited record and the appellant's burden on appeal to show prejudicial error, we affirm.[2]

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Andrea and James Connors (James) have two minor children. The couple previously lived together with their children in San Diego, but in January 2021 James and the children moved to Middleboro, Massachusetts. In February 2021 James filed a complaint, in Massachusetts court, for custody, support, and parenting time. The court granted temporary custody orders on an emergency basis.

On April 6, 2021, Andrea initiated a case in San Diego, seeking a domestic violence restraining order against James and custody of the children. Complete copies of any temporary orders issued in response to this

---

[1] All further statutory references are to the Family Code unless otherwise specified.

[2] Andrea filed five requests for judicial notice. Judicial notice may be taken of the matters specified in Evidence Code sections 451 and 452. However, only relevant material is subject to judicial notice. (*State Compensation Insurance Fund v. ReadyLink Healthcare, Inc.* (2020) 50 Cal.App.5th 422, 442.) We also do not take judicial notice of matters that were not presented to the trial court absent exceptional circumstances. (*Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 625.) Nor do we take judicial notice of matters that are already in the record, as that is unnecessary. (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 674.) None of Andrea's requests comply with these rules. She seeks judicial notice of matters that are within the clerk's transcript, not subject to judicial notice, or irrelevant. She also seeks judicial notice of matters that were not presented to the trial court without demonstrating exceptional circumstances for their consideration. We therefore deny all five requests for judicial notice.

filing are not in the record, but James concedes a temporary restraining order was issued against him.

After discussing the case with the court in Massachusetts on April 14, 2021, under the authority of the Uniform Child Custody Jurisdiction and Enforcement Act (§ 3400, et seq.), the court in San Diego determined that it had home state jurisdiction. The court in Massachusetts then vacated all prior orders and dismissed its case on June 22, 2021.

On May 21, 2021, Andrea initiated a second family law case in San Diego by filing a petition for custody. James filed an ex parte application for custody and consolidation of the two San Diego cases in response on May 25, 2021. The court granted the request for consolidation on May 26, 2021. James thereafter filed a request for an order regarding custody, visitation, and relocation of the children.

On July 1, 2021, the court denied Andrea's request for a restraining order. Andrea filed two subsequent requests for restraining orders on August 16, 2021, and January 13, 2022, but she ultimately decided to not pursue them. James also sought a restraining order against Andrea, which was partially granted on September 10, 2021, and expired after one year.

On July 28, 2021, the court set the matters of custody, visitation, and relocation for an evidentiary hearing. Evidentiary hearings took place over several days between October 6, 2021, and June 1, 2022. At the conclusion of those hearings, the court ordered Andrea and James shall share joint legal custody, the children shall primarily reside with James in Plymouth County, Massachusetts, and Andrea may visit the children on a specified schedule.

Andrea argues the June 1, 2022 order[3] should be reversed because: (1) the court did not properly apply section 3044; (2) the record has been altered; (3) opposing counsel committed misconduct; and (4) the foundation of the order is based on lies. The limited record before us does not support Andrea's claims of error, thus we affirm.

## II.

## DISCUSSION

A.  *Guiding Appellate Rules*

We begin with several principles of appellate law that guide our review.[4] First, the parties must support their factual assertions with citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Both parties disregard this rule. James's brief does not contain any record citations.[5] Andrea's brief contains numerous factual assertions without citation, and when she does provide citations, they often do not support her

---

[3]  Andrea also appears to dispute two earlier orders entered on May 26, 2021, and July 1, 2021. We lack jurisdiction to consider these orders because Andrea's notice of appeal identifies only the June 1, 2022 order as the order from which the appeal is taken. (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239.) Additionally, deadline for appealing those orders had lapsed when the notice of appeal was filed. (California Rules of Court, rule 8.104; *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 881.)

[4]  As a self-represented litigant, Andrea is entitled to the same but no greater consideration than other litigants, and she must therefore follow the rules of appellate procedure. (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861.)

[5]  We note that Andrea did not file a reply to James's brief.

4

factual assertions.[6]  We therefore disregard the asserted facts that are not supported by a proper citation.  (*Rybolt v. Riley* (2018) 20 Cal.App.5th 864, 868.)

Second, "it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment."  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) " 'Consequently, [the appellant] has the burden of providing an adequate record.  [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' "  (*Id.* at p. 609.) An appellant therefore has the burden of providing a reporter's transcript, an agreed statement, or a settled statement if the appellant intends to raise an issue that requires consideration of the oral proceedings.  (Cal. Rules of Court, rule 8.120(b).)  Similarly, " '[w]here exhibits are missing we will not presume they would undermine the judgment.' "  (*Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 657.)

At the evidentiary hearings that led to the challenged order, the court admitted witness testimony and various exhibits.  The first two hearings were reported, while the final three were not.  The record does not include a reporter's transcript or an agreed or settled statement regarding any of the hearings, nor does it include any of the exhibits that were admitted.  As

---

[6]     Andrea does not properly cite to the second volume of the clerk's transcript.  Instead of referring to the designated page numbers (pages 241 to 383), her citations appear to be based on pagination starting over at page one for volume two.  For example, she cites to "2 CT 21" for a document located at the 21st page of volume two, which should have been cited as "2 CT 261."  We have interpreted these citations the best we can.

discussed below, this hampers our review of the claimed errors and requires that we resolve them against appellant.

Third, " ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried." ' " (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.) There is no indication that Andrea previously raised many of the issues she now complains of, preventing her from raising them on this appeal.

Fourth, " '[w]here a point is merely asserted by [appellant] without any [substantive] argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion.' " (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418.) Andrea appears to assert additional grounds for challenging the June 1, 2022 order in the conclusion of her brief. She states Plymouth is too far away and has inadequate facilities for the children, her visitation rights are impossible to accommodate, and she and the children did not consent to the move. Andrea does not provide any argument or legal authority to support these grounds, so we do not consider them.

Finally, in an initial custody order such as the one in this case, "the trial court has 'the widest discretion to choose a parenting plan that is in the best interest of the child.' " (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1087.) Our review of such an order is governed by the deferential abuse of discretion test, and the order will be upheld when the trial court " 'could have reasonably concluded that the order in question advanced the "best interest" of the child.' " (*Johnston-Rossi v. Rossi* (2023) 88 Cal.App.5th 1081, 1087.)

6

B.     *Section 3044*

"Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, or against the child or the child's siblings, . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . ." (§ 3044, subd. (a).)

Andrea argues that section 3044 applies because she obtained a temporary domestic violence restraining order against James on April 6, 2021.  The limited record in this case prevents adequate review of this issue because we do not have a copy of any temporary restraining order against James, and without a reporter's transcript or an agreed or settled statement, we are unable to determine if section 3044 was addressed in the trial court.  Nonetheless, as noted above, James concedes a temporary restraining order was issued against him, and we will address the effect of that order under section 3044.

Unlike a regular domestic violence restraining order, a *temporary* domestic violence restraining order may be issued on an ex parte basis without notice.  (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.)  The court must rule on a request for a temporary domestic violence restraining order the same day it is filed, or by the next business day if it is filed too late in the day to permit effective review.  (§ 6326.)  If the court denies the request, it must state its reasons (§ 6320.5, subd. (a)), but there is no corresponding requirement that reasons be given for granting the request.  The court also cannot deny a jurisdictionally adequate request for a

7

temporary domestic violence restraining order unless it provides the petitioner a right to a noticed hearing. (§ 6320.5, subd. (b).)

As can be seen, the granting of a temporary domestic violence restraining does not require findings. Instead, the court merely conducts a facial review of the allegations to determine if they would constitute abuse. (See *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 337 [finding that that a jurisdictionally adequate request for a temporary domestic violence restraining order may only be summarily denied if the facts alleged fail to constitute abuse].)[7] As such, the issuance of the temporary order meant that Andrea's allegations, if true, were sufficient to constitute domestic violence, but there were no findings of domestic violence at that time. When the court ultimately ruled on the issue on July 1, 2021, it denied Andrea's request, showing that the court did not find James perpetrated domestic violence.

Further, although the record contains other allegations of domestic violence by James, Andrea has not identified any court findings on those allegations, and our independent review of the record does not disclose any.

For these reasons, Andrea has failed to establish that section 3044 applies, and no error has been shown on this ground.

C. *Record Alteration*

Andrea alleges "The record in this case has been dramatically altered, mutilated, and seemingly forged. . . . This pattern of tampering was set to intentionally mislead and confuse the Presiding Family Court Judge." There is no indication that Andrea raised this claim in the trial court, and she has failed to provide any record citations to support it. Additionally, our review

---

7 The opinion in *Nakamura v. Parker* led to the enactment of section 6320.5. (Sen. Com. on Judiciary, Analysis of Assem. Bill. No. 2553 (2007–2008 Reg. Sess.) as amended Apr. 29, 2008, p. 4.)

8

of the record, which includes two sets of the registers of actions for each of the consolidated cases and the clerk's transcript designated by Andrea, does not reveal any alterations. Andrea has therefore failed to show the alleged record alteration occurred.

D. *Misconduct by Opposing Counsel*

Andrea claims the actions of James's attorney, Ben Embry, "constitute legal malpractice, professional misconduct, and a violation of ethical rules." Andrea alleges Mr. Embry filed false papers, improperly served documents, failed to coordinate service as agreed, refused communication, and facilitated James's improper behavior.

Again, there is no indication that Andrea raised this issue in the trial court, and most of her allegations are not supported by citations to the record.

Even if we assume misconduct, it would not warrant reversal unless Andrea shows that she would have achieved a more favorable result in the absence of that misconduct. (*Jackson v. Park* (2021) 66 Cal.App.5th 1196, 1216.) Most of the alleged misconduct occurred prior to the evidentiary hearings that led to the challenged order, so it was unlikely to affect the outcome of those hearings and the record does not show otherwise. The only instances that conceivably occurred during the pertinent evidentiary hearings are the general allegations that Mr. Embry "knowingly and willfully misrepresent[ed] facts in both cases, to all judges," and that he "continued manipulating Judge Rosenstein." Andrea does not provide any record citations or explanation connecting these allegations to the relevant hearings, and our review of the record does not show any misrepresentation or manipulation at those hearings.

Based on the foregoing, Andrea has failed to show reversable error based on Mr. Embry's conduct.

9

E.  *Alleged Lies*

Andrea claims the foundation of the June 1, 2022 order is based on lies found in papers James filed on May 25, 2021. " 'We do not judge credibility on appeal.' " (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 824.) Additionally, there is no indication that the court considered James's filings from May 25, 2021, at the evidentiary hearings that resulted in the June 1, 2022 order. Accordingly, the "alleged lies" do not warrant reversal.

DISPOSITION

The order is affirmed.


IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.