Filed 2/18/14; pub. order 3/18/14 (see end of opn).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BALDWIN ENEAJI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PAMELA CHIMEZIE UBBOE,<br><br>    Defendant and Appellant. | B247885<br><br>(Los Angeles County<br>Super. Ct. No. PD046172) |

APPEAL from an order of the Superior Court of Los Angeles County.  Patricia Ito, Commissioner.  Reversed and remanded.

Family Violence Appellate Project, Nancy K.D. Lemon, Jennafer Dorfman Wagner; Wilson Sonsini Goodrich & Rosati, Eugene Marder; Asian Pacific American Legal Center and Amy Woo Lee for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\* \* \* \* \* \*

Pamela Chimezie Ubboe (Ubboe) appeals from an order denying her request for a renewal of a Domestic Violence Prevention Act (Fam. Code,[1] § 6200 et seq.) restraining order against her former spouse, Baldwin Eneaji (Eneaji).[2]  We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Ubboe and Eneaji were married in March 2003 and divorced in May 2010.  On June 26, 2009, during the divorce proceedings, Ubboe filed a request for a domestic violence prevention restraining order against Eneaji.  Ubboe described a history of verbal and physical abuse by Eneaji during the marriage.  She also declared that the violent conduct continued after he moved out of their home on May 9, 2009.

Ubboe alleged that in March 2009, Eneaji asked her to move out of the house and rent an apartment; but she replied that she was not going to move.  Later that day, Eneaji made her go with him to look at apartments.  He tried to force her to sign a lease, but she refused.  Later that day, they went to a friend's house.  While they were at the friend's house, Eneaji got upset with Ubboe and pushed her to the ground and tried to choke her.  The friend intervened and stopped Eneaji from choking Ubboe.  Four days later, Ubboe filed a police report concerning the incident.

Ubboe also alleged the details of an incident that had occurred several years prior to their divorce.  It happened while they were sitting in a car and talking to each other.  Ubboe said something Eneaji did not like so he slapped her face with the back of his hand.  In the application, Ubboe further declared "there are too many incidents in which [Eneaji]" physically abused her.  Whenever he became angry, he would throw her against the wall, and would also slap and punch her.  He would leave bruises all over her body whenever they argued.  She would not call the police; however, her family knew that he beat her every time he got angry.

---

[1]     All further statutory references are to the Family Code unless otherwise indicated.

[2]     Eneaji, who represented himself at the renewal hearing, did not file a respondent's brief on appeal.

On June 26, 2009, when she and Eneaji were leaving the courthouse after a hearing in the dissolution proceedings, Eneaji asked if Ubboe could give him a ride to his car. As they were driving to his car, he told her she "could die" because she was fighting over her rights to their house. She asked if that meant that she could get killed. Eneaji said, "yes." Because she feared for her safety, she returned to the courthouse to request a restraining order. The trial court issued a domestic violence temporary restraining order that prohibited Eneaji from, among other things, harassing, attacking, threatening, hitting, following, or stalking Ubboe. He was also ordered to remain 100 yards away from Ubboe's person, home, job and vehicle.

On July 17, 2009, the trial court issued a domestic violence prevention restraining order against Eneaji for a term of three years. Eneaji was prohibited from doing the following things to Ubboe: harassing, attacking, striking, threatening, assaulting, hitting, following, stalking, molesting, destroying her personal property, disturbing the peace, keeping her under surveillance, or blocking her movements. Eneaji was ordered not to directly or indirectly contact or telephone Ubboe. He was ordered to stay 100 yards from Ubboe, her home, job and vehicle.

On July 16, 2012, Ubboe filed a request for a permanent renewal of the domestic violence prevention restraining order. In the request, Ubboe declared that she continued to fear Eneaji because of the abuse during the marriage. Eneaji had also communicated with her, in violation of the restraining order. She alleged that on March 7, 2010, she was driving to church when Eneaji pulled up in a car next to her and looked over at her. She panicked and sped up in front of him. When she pulled into the church parking lot, he followed her. Because she was afraid, she pulled out her cell phone to call the police. When she picked up the cell phone, the car Eneaji was in drove away. Ubboe filed a police report of the incident, which was attached to her renewal application.

In the application Ubboe further alleged that in early 2011, Ubboe went to a Ross Dress for Less store in West Los Angeles. When she was about to check out, she saw Eneaji at the checkout counter. He began calling to her in Nigerian, which is their native language. He told her to come over to him because he wanted to show her some pictures.

3

This contact frightened her since she just wanted him to leave her alone. After he checked out, he stood outside the entrance to the store, watched Ubboe and smiled at her. This encounter terrified her. She headed back into the store and called a friend. Ubboe thought she needed to tell someone what was happening in case Eneaji harmed her.

In addition to the above incidents, Ubboe believed that there were times when Eneaji was lurking outside her home in the evening, but could not be sure it was him. On two occasions around August 2009, she saw the shadow of a man, "who seemed to be" Eneaji, moving around outside of the front of the house the two had shared during the marriage. Ubboe was terrified and pushed 9-1-1 on the telephone in case he tried to force the door open. She stayed very quiet, with the lights out, so it appeared that no one was at home.

Ubboe declared that, while they were married, Eneaji was "extremely physically abusive" to her after he learned she was unable to have a child. When he was angry, he threw her against the wall, floor or furniture. He would slap, kick and punch her leaving bruises all over her body. He threatened to kill her "on numerous occasions, too many to count."

Ubboe described Eneaji as a "vengeful person" and was afraid he would carry out the threats to kill her. Because of that fear, she had disconnected herself from the Nigerian community and only participated in her church.

At a contested hearing, on October 31, 2012, Eneaji appeared in pro. per. He testified that he did not follow Ubboe in a car in March 2010 and denied ever being in Santa Clarita. He admitted being in the same Ross store with her; however, he denied making any comments or having any contact with her. He testified that he had moved on with his life since the divorce. He moved back to Nigeria, remarried, had one child and was expecting another child. He comes to UCLA for medical appointments and had three appointments during the month of November 2012.

Ubboe testified that she did not call the police when the two were at the Ross store because she thought 9-1-1 was only for life and death emergencies. She called a friend because she wanted someone to know about it.

4

The trial court denied the renewal request on the ground it did not meet the *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275 (*Ritchie*) standard. The trial court reasoned that the last incident occurred about one-and-a-half years before the renewal request was made. The only thing that occurred was that Eneaji spoke to Ubboe at a store. The trial court articulated the *Ritchie* standard as "a reasonable apprehension of future physical abuse." The trial court stated: "Even assuming the incident occurred, it was so long ago and it was of such nature that it would not by itself support renewal of domestic violence restraining order" under the *Ritchie* standard. The trial court also stated that Ubboe was not sure that Eneaji was the person outside her home in 2009. The 2010 incident where Eneaji followed Ubboe into the parking lot was "fairly remote in time." The trial court accepted Eneaji's testimony that he lives in Nigeria and comes to the United States only for medical appointments.

Ubboe's counsel argued that section 6345 did not require a further showing of abuse but rather required "a reasonable fear of future abuse." She contended that section 6345 did not require serious violations of the restraining order; but the violations coupled with the history of severe physical abuse, which established the basis for issuing the July 2009 restraining order, supported the reasonableness of Ubboe's fears. The trial court then concluded that "if nothing happened in three years," there was no reasonable apprehension. Ubboe filed a timely appeal from the order denying her request.

## DISCUSSION

The purposes of the Domestic Violence Prevention Act "are to prevent the recurrence of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) Section 6345, subdivision (a) provides that a domestic violence prevention restraining order "*may be renewed, upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order*, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party." (Italics added.)

5

The trial court's ruling on a request to renew a domestic violence prevention restraining order is reviewed for an abuse of discretion. (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333.) An abuse of discretion occurs when the ruling exceeds the bounds of reason. (*Ibid*.) But, the exercise of discretion is not unfettered in such cases. (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 337.) "All exercises of discretion must be guided by applicable legal principles, however, which are derived from the statute under which discretion is conferred. [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. [Citation.]" (*Farmers Insurance Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106.) The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is one of law (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420–421) requiring de novo review. (*Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1118.)

In a contested case, "[a] trial court should renew the [domestic violence prevention restraining] order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains, a 'reasonable apprehension' of future abuse." (*Ritchie, supra*, 115 Cal.App.4th at p. 1290.) The issue is whether "the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Ibid*.) In assessing the risk of future abuse, the trial court "ordinarily should consider the evidence and findings on which [the] initial order was based." (*Ibid*.) The existence of the order and its underlying findings and facts "often will be enough in themselves to provide the necessary proof to satisfy that test." (*Id*. at p. 1291.) In addition, the trial court should consider any significant change in circumstances such as whether the parties have moved on with their lives. (*Ibid*.) The trial court should also consider whether the circumstances have enhanced the opportunity and possibility of future abuse. (*Ibid*.) The burdens imposed on the restrained party do

6

not "justify denial of a renewed protective order where the 'reasonable apprehension' is of future acts of *physical violence*." (*Ibid*.)

Here, in denying the renewal request, the trial court concluded in part: "if nothing has happened in three years, I don't see how there is reasonable apprehension" and, the *Ritchie* standard required a "reasonable apprehension of [future] physical abuse." We find the trial court's legal conclusions in this respect were erroneous.

First, the trial court erred in concluding that the denial was appropriate because nothing happened in the three years since the restraining order. As previously noted, section 6345, subdivision (a) expressly states that the restraining order "*may be renewed, upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order . . . .*" (Italics added.) Thus, "section 6345 makes it unnecessary for the protected party to introduce or the court to consider actual acts of abuse the restrained party committed after the original order went into effect." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1284.) *Ritchie* explained: "It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order. If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order. Indeed the fact a protective order has proved effective is a good reason for seeking its renewal." (*Ibid*.) Thus, the trial court's conclusion that the absence of further abuse in the three-year period was a sufficient basis for denying renewal is not supported by the law.

Second, the trial court incorrectly concluded that *Ritchie* required a "reasonable apprehension of [future] *physical abuse*." As noted above, *Ritchie* referred to physical abuse in the context of whether the burden imposed on the restrained party justified denying the renewal. (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.) However, *Ritchie* did not hold that a reasonable fear of physical abuse was required. More importantly, sections 6203 and 6320 do not limit the definition of abuse to physical injury. Section 6203, subdivision (d) defines "abuse" as behavior which may be enjoined under section 6320. The behavior which may be enjoined under section 6320, subdivision (a) is

7

"molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party . . . ." This definition is not confined to physical abuse but specifies a multitude of behavior which does not involve any physical injury or assaultive acts. (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 201–202.) In sum, there is no requirement that the party requesting a renewal have a fear of *physical* abuse. (§§ 6203, subd. (d), 6320, subd. (a); *Lister v. Bowen, supra,* 215 Cal.App.4th at p. 333.)

It should be noted the trial court gave additional reasons for denying the renewal request, e.g., the remoteness of the incidents plus Eneaji's relocation to Nigeria. However, the decision was predicated on an erroneous understanding of the applicable law. Under the circumstances, the order denying the renewal request must be reversed and remanded for the trial court to exercise its discretion in accordance with the views expressed in this opinion.

## DISPOSITION

The order denying the request to renew the domestic violence prevention restraining order is reversed.  The matter is remanded with directions for the trial court to reconsider the request to renew the restraining order in accordance with the views expressed in this opinion.  Pamela Chimezie Ubboe is awarded her costs on appeal.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

CHAVEZ

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| BALDWIN ENEAJI, | B247885 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PD046172) |
| v. | |
| PAMELA CHIMEZIE UBBOE, | |
| Defendant and Appellant. | |


THE COURT:*


The opinion in the above-entitled matter filed on February 18, 2014, was not certified for publication.


For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


_____

\* BOREN, P. J., CHAVEZ, J., FERNS, J.**

** Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


1