Filed 10/19/22  Weil v. Gallegos CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NATHALIE WEIL,<br><br>    Petitioner and Appellant,<br><br>        v.<br><br>RICHARD GALLEGOS,<br><br>    Respondent. | F083832<br><br>(Super. Ct. No. 21FL-02387)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Donald E. Shaver, Judge.

Family Violence Appellate Project, Taylor Campion, Arati Vasan, Jennafer Dorfman Wagner, Erin Smith; Schaerr Jaffe LLP and Donald M. Falk, for Petitioner and Appellant.

No appearance for Respondent.

-ooOoo-

Nathalie Weil filed a request for a domestic violence restraining order (DVRO) against her boyfriend, Richard Gallegos.  They lived together in an apartment and both of

_____
[*]    Before Poochigian, Acting P. J., Detjen, J. and DeSantos, J.

their names were on the lease. Weil sought an order requiring Gallegos to move out of their apartment, as well as personal conduct and stay-away orders. At the conclusion of the hearing on Weil's request, the trial court granted a DVRO against Gallegos, which included personal conduct and stay-away orders, but denied Weil's request for a move-out order, stating it could not order Gallegos to move out because it was up to the landlord to decide who would remain in the apartment.

Weil appeals from the DVRO, arguing the trial court abused its discretion by denying her request for a move-out order.[1] She contends the trial court committed an error of law as it had the power to order Gallegos to move out of their apartment and the landlord had neither the legal authority nor means to evict either of them. We agree the trial court applied an erroneous legal standard and remand the case for the trial court to consider Weil's request for a move-out order under the correct legal standard.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Weil's Request for a Domestic Violence Restraining Order*

Weil filed a request for a DVRO on November 4, 2021, in which she sought personal conduct, stay-away and move-out orders, all of which were granted in a temporary restraining order the following day. Weil alleged the following under penalty of perjury.

Weil and Gallegos lived together in a leased unit—Weil's name was on the lease, she made the payments, and she worked remotely from home. Gallegos had been unemployed since about January 2020. Gallegos had a history of criminal violence ranging from criminal threats, assault with a deadly weapon, aggravated battery, and

---

[1] Gallegos did not file a respondent's brief. We do not treat the failure to file a respondent's brief as an admission of error; rather, we examine the record, Weil's brief, and any oral argument by Weil to see if it supports any of her claims of error. (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1.)

corporal punishment on a spouse. After his release from prison, his wife died from a fall down a flight of stairs.

During August and September 2021, Gallegos became increasingly volatile, and the police were called to the apartment several times. For example, Weil called the police when Gallegos gestured toward her in a threatening manner with a knife. Other times, he tore her clothes, and pinched and poked her to the point of bruising. He berated her profanely for hours at a time and disrupted her telecommuting work however he could. Gallegos also threatened to take Weil "for a drive in the country" after which he would "come back alone."

In September 2021, Weil tried to leave the apartment after Gallegos was "raging uncontrollably," which further enraged Gallegos. He threw a can of air sanitizer at her, which ricocheted off her arm and broke a vanity mirror on her desk. She told him to "back off or [she] would call the police again." Gallegos responded with more yelling and insults. While Weil was preparing to take a shower, Gallegos entered the bathroom concerned because police were "all around the house" and accusing her of calling them. She had not done so but told him to "[d]eal with it." While she was in the shower, Gallegos told her the police wanted to speak with her to ensure she was safe. She went to the bathroom door wrapped in a towel and found an officer standing outside the door, who asked if she was all right. Because she was so "torn down" by the day's events, she "lied" and told the police officer she was. After the police left, Gallegos taunted her, stating his son-in-law was FBI, did she think they would arrest him, no one would believe her, and the police had been there four of five times and "I'm not going anywhere."

In another incident that same month, Weil was going to call the police because Gallegos was verbally abusive when Gallegos ripped the phone out of her hand and punched her in the chest with both hands. The force of the blow sent her flying into the breakfast bar. She fell onto the dog's water bowl and rose to her hands and knees, trying to catch her breath. As she tried to crawl away, Gallegos danced around her telling her to

3.

crawl. The incident left her bruised on her chest, back, buttocks, and legs. She was too scared to call the police.

The final incident occurred on October 14, 2021. Weil was preparing her morning coffee when Gallegos began profanely insulting her. When Gallegos mentioned his deceased sister, Weil responded, "She must be proud." Gallegos struck Weil on the back of her head, sending her and her coffee flying in different directions. When she tried to call 911, Gallegos ripped the phone from her hand and threw it out of reach, screaming, "What the fuck are you doing you stupid bitch? You think you can just throw coffee on me?"

Gallegos forced Weil to the ground and pinned her underneath him, pressing her head against the ground with his forearm. When Weil began screaming, Gallegos covered her mouth and nose with his hand, telling her to shut up. Weil began to lose consciousness as Gallegos exerted pressure on her back, making it impossible for her to inhale. As she began to go limp, Gallegos released her. Weil got up on all fours; her nose was bleeding. Gallegos continued to scream profanities at her as she made it to the front patio and began screaming for help.

Gallegos grabbed her and brought her back inside, again pinning her to the ground with his body, pressing her head to the ground with his forearm, and covering her nose and mouth with his hand. After he released her, she was able to get to her feet and run to the door, but Gallegos had locked and bolted the door. As she fumbled with the locks, he grabbed her arm, but Weil pulled her arm out of her sleeve and was able to get away, screaming for help at the top of her lungs. She ran to a neighbor's home, who called the police.

Weil described the effects of Gallegos's repeated abuse, noting she had "become hypervigilant and unable to concentrate on the tasks at hand." Gallegos left her feeling "anxious and depressed."

4.

### Gallegos's Response

Gallegos filed a response to Weil's request, in which he agreed to the personal conduct order but opposed the stay-away and move-out orders. Gallegos objected to the stay-away order because he had a car parked at the shared apartment. He asserted he should not be ordered to move out because he was on the lease, which he secured by himself in April 2017; he paid the first and last month's rent, an extra month's rent that was required due to his employment history, and a security deposit, which totaled $3,000. Gallegos allowed Weil to move in with him in August 2020 and he added her name to the lease because he did not want to violate the lease. Gallegos stated he had been living out of his car and he wanted to return to the home he "worked so hard to obtain."

Gallegos found Weil's statements "peculiar in regards to the alleged incidents of abuse towards her," since if Weil was injured, the police would have verified the injuries and taken pictures of them and he would have been taken to jail, but the police did not see any injuries or document them, so they left. Gallegos stated the October 14, 2021, incident began when Weil flung hot coffee on his neck and chest; his reaction to this was purely reflexive, but he was handcuffed and taken to jail "for this aggressive act of violence carried out by" Weil. He also claimed Weil would intentionally provoke him to instigate an argument and "get a rise out of" him, and then call the police to have him removed from the home so she could "waltz right in and take over the lease."

### The Hearing

A hearing on Weil's request was held on November 24, 2021. The trial court examined Weil and Gallegos about the October 14, 2021 incident. The trial court reviewed the police report of the incident and looked at photos Weil took of her injuries. Gallegos tried to attack Weil's credibility by pointing to her admission that when the police responded to the incident where he threw a can of air sanitizer at her, she told the police she was all right, which he asserted was "lying to the police" and made it likely she was "lying to the police now." The trial court observed Weil "tried to protect you."

5.

While the trial court thought the "actual events … probably lie somewhere between the two versions here," it found sufficient evidence to justify a restraining order and granted a three-year order on the basis requested. The trial court confirmed Weil requested a move-out order, and the lease was in both their names. The trial court asked what they wanted to do with the apartment. Weil responded she wanted to stay there, as she worked from home and was not able to come up with first and last month's rent. The trial court stated whoever stayed in the apartment would have to renegotiate a new lease with the landlord and it would be up to the landlord as to which party would stay in the apartment, noting the landlord would decide who would remain in the apartment after running checks of their backgrounds and finances.

The trial court stated it was going to remove the move-out order from the DVRO but leave the 100-yard stay-away order, explaining: "[W]hat the two of you have to do is just tell the landlord, one of us has to move out. We both want to have the apartment. You decide. And the landlord is just going to have to decide who gets to live there and who they want to have on the lease … because … if one of you moves out and you're both on the lease, they're still going to charge the party who's not living there. If somebody moves out, they'll go after the other party. So the other party will continue to be liable for rent even though you're not living there. [¶] So to avoid that situation, just go to the landlord and let the landlord decide who's going to continue with that." The trial court added it was clear they could not live together and when Gallegos asserted the utilities were in his name, the court told the parties they would have to sort it out with the utility companies and the landlord, because having both names on the lease created a "difficult situation" and the court was "not in control of it," as the landlord could do whatever he wants and the court could not "order him to let one of you stay there. So that's who's going to decide it, not me."

The three-year DVRO was filed on November 29, 2021, which included personal conduct and stay-away orders, but did not contain a move-out order. It also contained a

civil standby order if Gallegos arranged with Weil to get his personal property from the residence.

## DISCUSSION

The sole issue Weil raises on appeal is the trial court's decision not to include a move-out order in the DVRO. She argues the trial court abused its discretion in denying the move-out order because the trial court was empowered to order Gallegos to move out and the landlord could not order either tenant to leave. Weil asserts that since she satisfied all the statutory criteria for a move-out order, we should remand the case with directions to enter one in her favor or, at a minimum, for the trial court to consider her request for a move-out order under the correct legal standard.

The Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.)[2] (DVPA) exists "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) "Under the DVPA, a court is authorized to issue a restraining order enjoining a party from engaging in specific acts of harassment or abuse against a cohabitant or former cohabitant." (*Nicole G. v. Braithwaite* (2020) 49 Cal.App.5th 990, 999 (*Nicole G.*), citing §§ 6211, subd. (b), 6218, 6322, 6340, subd. (a)(1).)

Similarly, the DVPA authorizes a court to issue a restraining order excluding a person from the "family dwelling" or "common dwelling of both parties … on the conditions the court determines, regardless of which party … is the lessee of the dwelling." (§ 6321, subd. (a); see § 6218, subd. (b).) "The court may issue an exclusion order only on a showing that: (1) the party who will stay in the dwelling has a right under color of law to possess the property; (2) the party to be excluded has assaulted or threatens to assault the other party; and (3) physical or emotional harm would otherwise

---

[2] Undesignated statutory references are to the Family Code.

result to the other party. (§§ 6321, subd. (b)(1)-(3), 6340, subd. (a)(1).) And finally, the court also has authority to issue orders determining the temporary use, possession, and control of real or personal property of the parties and the payment of any liens or encumbrances coming due during the period the order is in effect. (§ 6324.)" (*Nicole G.*, *supra*, 49 Cal.App.5th at p. 999.)

Here, the trial court decided not to issue a move-out order because it believed it did not have the power to exclude Gallegos from the couple's apartment since both Weil's and Gallegos's names were on the lease. Section 6321, subdivision (a), however, clearly gives the trial court the power to exclude Gallegos from the parties' apartment "*regardless of which party … is the lessee of the dwelling.*" (Italics added.) As stated in *Nicole G.*, the DVPA authorizes "a court to order the restrained party to move out of the property and allow the protected party to use and possess the property." (*Nicole G.*, *supra*, 49 Cal.App.5th at p. 993.) Thus, the trial court was mistaken when it stated it did not have the power to exclude Gallegos from the couple's apartment. Not only could it exclude Gallegos, but it also had the power to impose conditions, such as who would pay the lease and utilities.

As Weil asserts, the trial court also was mistaken in believing the landlord could choose which of the two tenants on the lease would remain in the apartment, as the landlord does not have the legal authority to order the exclusion of one over the other. The landlord could not terminate the tenancy of either Weil or Gallegos without just cause, as they are protected by Civil Code section 1946.2, which prohibits termination of a tenancy without "just cause" where, as here, an adult tenant has been added to the lease after an existing tenant has occupied the property for more than 24 months. (Civ. Code,

§ 1946.2, subds. (a) & (b).)[3] Moreover, the landlord could not change the locks without a court order excluding the restrained person from the apartment.  (Civ. Code, § 1941.6.)[4]

The landlord also could not force only Gallegos or Weil to vacate the property through the unlawful detainer process.  (Code Civ. Proc., § 1161 [permitting unlawful detainer action for specified breaches].)  Even if a basis existed to bring an unlawful detainer action here, the landlord would be granted possession of the premises, meaning all tenants would be evicted.  (*Coyne v. De Leo* (2018) 26 Cal.App.5th 801, 805, 817 [scope of unlawful detainer action generally is limited to " 'dealing only with the issue of right to possession' " and is designed to " 'provide the landlord with a summary, expeditious way of getting back his property when a tenant fails to pay the rent or refuses to vacate the premises at the end of his tenancy' "]; Code Civ. Proc., § 1174, subd. (a) [unlawful detainer judgment grants the landlord "possession of the premises"].)

Since the trial court acted under the misapprehension that it did not have the power to issue an order excluding Gallegos from the parties' apartment and the decision of who would live there should be left to the landlord, it did not apply the correct standard in declining to issue a move-out order.  Accordingly, the trial court abused its discretion.  (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 601–602 [while denial of a DVRO is reviewed for abuse of discretion, " ' "whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review" ' "]; *Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 [trial court " 'has not properly exercised its discretion under the law' " where its decision " 'is influenced by an

---

**3**      Civil Code section 1946.2, subdivision (b) lists what is included within the meaning of "just cause," which can be either "[a]t-fault just cause" or "[n]o-fault just cause."  None of the situations listed appear to include a stay-away order issued as part of a DVRO.

**4**      Weil asserts in her brief that her landlord refused to change the locks because she did not have a move-out-order.

erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion' "].)

Weil asserts the trial court would have issued the move-out order had it applied the correct legal principles, as the evidence established the three elements the court is required to find. However, since the trial court's decision was predicated on an erroneous understanding of the applicable law, the order denying the move-out request must be reversed and remanded for the trial court to exercise its discretion in accordance with this opinion.

## **DISPOSITION**

The November 29, 2021 order denying Weil's request for a move-out order is reversed. The matter is remanded with directions for the trial court to reconsider the request for a move-out order in accordance with the views expressed in this opinion. Weil is awarded her costs on appeal.