Filed 5/16/24  Tarin v. Tarin CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DOLORES TARIN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JESSE TARIN,<br><br>    Defendant and Respondent. | B330854<br><br>(Los Angeles County<br>Super. Ct. No. BQ052232) |

APPEAL from an order of the Superior Court of Los Angeles County, Dennis F. Hernandez, Commissioner.  Affirmed.

Barbaro, Chinen, Pitzer & Duke and Raimund Freihube for Plaintiff and Appellant.

No appearance for Respondent.

_____

In February 2023, appellant Dolores Tarin sought to renew a domestic violence restraining order first obtained in 2016 against her brother, respondent Jesse Tarin, after he engaged in physical violence against her. The trial court found that Dolores[1] maintained a genuine but not objectively reasonable apprehension that Jesse would engage in future abuse. The court denied her petition, concluding Dolores had failed to meet her burden to present sufficient evidence to justify renewal of the restraining order. After independent review of the record, we find the trial court applied the correct legal standard and did not abuse its discretion in denying renewal of the restraining order. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2016, long estranged siblings Dolores and Jesse were together at the home of their mother, who was gravely ill. Jesse's daughter was also present. Jesse became "provoked and angry" after his daughter tearfully informed him Dolores had orally attacked her. Jesse angrily told Dolores "not [to] treat [his] daughter like that," and physically assaulted her, hitting or slapping Dolores multiple times on her head and face, even after she fell to the ground. Police were summoned and Dolores obtained a two-year domestic violence restraining order (DVRO) against Jesse. Based on her ongoing fear of Jesse, Dolores sought and received a five-year renewal of the DVRO in February 2018. The DVRO was set to expire February 24, 2023.

---

[1] The parties share a surname so we refer to them by their first names to ensure clarity.

On February 21, 2023, Dolores filed a request to renew the DVRO. In her request, Dolores stated she remained afraid Jesse would abuse her in the future because "[t]he original attack was completely unexpected and unprovoked. Thereafter Jesse . . . admitted to the battery. Then there was an on-going civil case for damages between Jesse . . . and [Dolores]. After [that case] was dismissed, Jesse . . . sued [Dolores] for malicious prosecution, which [was] still on-going. Unless Jesse . . . [was] further restrained, [Dolores] remain[ed] very fearful that he [would] hit [her] again. He is unpredictable. He did not take any meaningful anger management courses after the [DVRO was issued] in 2016."

Jesse denied the allegations and asked the court not to renew the DVRO. Jesse said there had been no contact between himself and Dolores since the DVRO was issued in 2016 (except through their litigation against each other) and there was no basis upon which to renew the order. The court held a hearing on April 20, 2023, at which Dolores, her husband, and Jesse testified.

Dolores testified about the events and physical violence that prompted her to obtain the DVRO in 2016 and to seek renewal of that order in 2018 due to ongoing litigation, family tension and her continued fear of violence by her brother. At the hearing Dolores testified that, although she had not seen them herself, Jesse had "been known to own firearms."[2] She testified

---

[2] Dolores said her mother told her she took Jesse's firearms away at some unspecified time because she feared he would hurt himself. Jesse testified he relinquished his firearms as a condition of the DVRO.

3

that "things" remained unsettled, and that she remained afraid of future harm and felt "like [Jesse] would come around or look for [her] or do something to [her] in retaliation." Dolores acknowledged that she and her brother were estranged for many years before 2016 and that, apart from court proceedings, there had been no contact of any kind between the siblings since February 2016. Dolores testified she had apprehension of future harm because her brother had "hostility towards [her]," was "short tempered," and she "fear[ed] that he [would] at some point track [her] down and do harm to [her]." She conceded Jesse never engaged in physical violence against her before 2016, and her belief that he had "unpredictable violent behavior tendencies" was based on her own experience and on information gleaned from the mothers of Jesse's children, with whom Jesse was purported to have had "altercations." Dolores said she and her brother lived about 15 miles apart from one another.

Dolores's husband testified that Dolores became nervous and apprehensive after Jesse's assault in 2016 and feared he might come to their house. She installed security cameras and locks for that reason, plus she had a general apprehension about security. Dolores remained anxious and afraid and attended counseling. Her husband believed that her fear of Jesse "might be part of" the reason Dolores attended counseling, but he felt there was "more involved." Dolores's husband knew of no contact between Dolores and Jesse since 2016, but Dolores had remained afraid her brother would come to their house.

Jesse testified Dolores had no contact with him and was also estranged from their mother (with whom Jesse spent a great deal of time) for about 35 years before the incident in 2016. Jesse admitted he felt provoked and angry after his daughter tearfully

4

told him about Dolores's hostile conduct in February 2016. He pointed his finger at his sister telling her "not [to] treat [his] daughter like that," and was physically violent with Dolores. After a criminal case had been filed against him, Jesse "complied with all the terms" of that case, including undergoing counseling. He said he relinquished his firearms as a condition of the 2016 DVRO. Jesse testified he had been "categorized with PTSD" after his military service in Vietnam and took psychotropic medication. Jesse conceded he had been and remained angry at Dolores but had done nothing to express his anger against her. Jesse informed the court that, apart from the fact that Dolores had "forc[ed him] to use [his] retirement money to defend" himself in ongoing litigation, he suffered no adverse consequences as a result of the issuance of the DVRO. When asked by the court whether he had done anything since 2016 to ensure he would not take any action against his sister in the future, Jesse said he had "added security devices to prevent [Dolores] from coming to assault [him]."

At the conclusion of the hearing, the trial court observed the evidence had been sufficient to warrant the initial DVRO. Now the relevant inquiry was whether Dolores's apprehension of future harm was both genuine and reasonable under the circumstances, that is, whether she had presented evidence to carry her burden to show a "sufficient risk of future abuse." Part of that determination involved ascertaining "[w]hether there's been any significant change in circumstances surrounding the events [that] justif[ied] the initial restraining order, and . . . whether there's any burdens on the restrained party that the court should consider." The court noted the parties had virtually no contact for 35 years before the emotionally fraught

5

confrontation in 2016 and found "no evidence . . . that [Jesse had] made any . . . threats since the initial incident in 2016," nor had Jesse had "any sort of contact with [Dolores] sufficient . . . to justify the renewal of the restraining order." The court found Dolores's "apprehension [was] not reasonable under the circumstances," and denied her request for renewal. Dolores filed this appeal.

## DISCUSSION

The gist of Dolores's argument on appeal is that reversal is in order because in determining whether her apprehension of future harm was objectively reasonable, the court applied the wrong legal standard by "show[ing] significant disinterest . . . in the facts underlying the issuance of the original restraining order," and denied the request for renewal "based solely on the factual finding . . . that '[it had not found] any recent incidents.' " She asserts that the trial court failed to analyze the reasonableness of her apprehension of future violence, the severity of the violence that gave rise to the 2016 DVRO, any changed circumstances, or any burden on Jesse. The record reflects otherwise.

1.    *Controlling Legal Principles*

Family Code section 6345 provides that a trial court may renew a restraining order "upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order. Renewals and subsequent renewals shall be subject to termination, modification or subsequent renewal by further order of the court . . . on the motion of a party." (Fam. Code, § 6345, subd. (a).)

6

According to longstanding law, a request to renew a DVRO, if contested, should not be granted simply because the party requesting renewal has "a subjective fear the party to be restrained will commit abusive acts in the future." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1288 (*Ritchie*).) The apprehension of future abusive acts must be reasonable. That is, the court must find that a reasonable person in the same circumstances would have a reasonable apprehension such abuse will occur unless the court issues a protective order. (*Ibid.*) Under this objective test, a trial court should renew the protective order, "if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse . . . . [T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Id.* at p. 1290.)

In *Ritchie*, as a matter of first impression, the court articulated three general factors for courts to consider in evaluating whether the requesting party has a reasonable apprehension of future abuse: (1) "the evidence and findings on which [the] initial [protective] order was based" (*Ritchie, supra*, 115 Cal.App.4th at p. 1290); (2) "any significant changes in the circumstances surrounding the events justifying the initial protective order" (*id.* at p. 1291); and (3) "the 'burdens' the protective order imposes on the restrained party." (*Ibid.*; see also *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 332–333 (*Lister*).)

7

2. *The Standard of Review*

The standard of review for an order granting or denying a request to renew a DVRO is abuse of discretion. (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 (*Eneaji*).) However, the exercise of judicial discretion must be guided by applicable legal principles, derived from the statute under which discretion is conferred. Thus, " 'a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.' " (*Ibid.*) Whether the trial court applied the correct legal standard in exercising its discretion to decide the underlying issue is a question of law subject to de novo review. (*Ibid.*) If the trial court's discretionary decision is grounded in the correct legal principles, we review for abuse of discretion. If more than one inference may reasonably be deduced from the facts, we lack the authority to substitute our decision for that of the trial court. (*Lister, supra,* 215 Cal.App.4th at p. 333.) It is a fundamental rule of appellate review that an appealed judgment or order is presumed to be correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) The appellant bears the burden of overcoming the presumption of correctness. (*Id.* at p. 609.) This rule governs even when, as here, the respondent does not appear on appeal. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 110, fn. 1.)

3. *No Abuse of Discretion*

Dolores insists the trial court erred in analyzing the request to renew the restraining order, because it denied renewal "based *solely* on [its] factual finding . . . that 'the Court does not find any recent incidents.' " (Italics added.) To assess this

8

contention, we consider both whether the court recognized the appropriate standard for assessing renewal of the DVRO and its application of that standard.

First, our independent review of the record reflects that the trial court applied the correct standard for determining whether to renew the DVRO. The court reiterated and applied the legal standard articulated in leading cases such as *Ritchie* and *Lister* in considering the parties' arguments. Without permitting the parties to relitigate the basis for the initial order, the court considered "the evidence and findings on which [the] initial [protective] order was based" (*Ritchie, supra*, 115 Cal.App.4th at p. 1290) by reviewing the parties' written submissions and argument, and permitting both sides to testify about the circumstances surrounding issuance of the initial DVRO and, what, if any, events or contact had occurred since February 2016. The court correctly noted it had the authority to renew the DVRO "without a showing of any further abuse since the issuance of the order," but that it "should renew [the DVRO] *if and only if* it [found] by a preponderance of the evidence that" Dolores's apprehension of future abuse by Jesse was both "genuine and reasonable." (Italics added.)

Second, the court noted that, under *Ritchie*, it was required "to determine [if] there's been a change of circumstances as [it] relates to either party" since the initial order was issued. (See *Ritchie, supra*, 115 Cal.App.4th at p. 1291 [in considering whether renewal is warranted, the trial court must assess whether there had been "any significant changes in the circumstances surrounding the events justifying the initial protective order"]. To that end, the court noted Dolores and her husband had testified that Dolores "installed security devices

9

. . . in part [because of] her apprehension of [Jesse]." The court also asked Jesse what if "anything [he had] done since 2016 to change [his] environment or change the situation such that . . . it's no longer possible that [he] could take any action against [his] sister." Jesse informed the court only that he also installed security devices.

Finally, the court inquired what " 'burdens' the protective order [had] impose[d] on the restrained party" (*Ritchie, supra*, 115 Cal.App.4th at p. 1291), by asking Jesse if he had suffered any negative "consequence as a result of the issuance of the restraining order." (See *ibid;* see also *Lister, supra,* 215 Cal.4th at pp. 332–333.)

In sum, the record reveals that Dolores's contention that the trial court "applied the wrong legal standard" when it denied her request to renew the 2016 DVRO is not well taken. The trial court clearly articulated and applied the appropriate legal test to determine whether the circumstances warranted renewal. To the extent Dolores suggests the court abused its discretion by placing excessive emphasis on the lack of contact after the original restraining order, we apply the deferential abuse of discretion standard. (*Eneaji, supra*, 229 Cal.App.4th at p. 1463.) Under that standard, we will reverse only upon a showing that the court's ruling "exceed[ed] the bounds of reason." (*Ibid.*) Dolores has demonstrated no abuse of discretion.

Dolores is correct that the only specific facts cited by the court in support of its order denying renewal involved the absence of threats or contact by Jesse since 2016. Without more, we would agree that the trial court's inquiries about additional instances of contact or abuse after February 2016 could support an inference that its analysis centered improperly on the absence

of "further abuse," in contravention of the statute. (Cf. Fam. Code, § 6345, subd. (a).) However, as detailed above, our independent review of the record reveals the court applied the correct legal standard by considering not just whether Jesse had violated the DVRO or engaged in abusive conduct after 2016, but also detailed testimony regarding the emotionally wrought circumstances that led up to the original DVRO (the parties' prolonged estrangement and Jesse's aversion to Dolores's belated contact with their dying mother), and Dolores's testimony about the basis for her continuing fear. On this record there is no merit to Dolores's claim that the trial court "misapplied the law" by "requiring a showing of more recent abuse and failing to analyze whether the original abuse was sufficient." (*Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 181.)

Reasonable minds could differ as to the reasonableness of Dolores's apprehension of future abuse, particularly in light of the parties' testimony of no contact or physical abuse during or since the filings of Dolores's civil action against Jesse and his retaliatory lawsuit against her. From this, the trial court may reasonably have inferred that Dolores's fear of future abuse was most closely connected to the vicious abuse in 2016 rather than the siblings' ongoing litigation. An abuse of discretion occurs where the trial court's ruling exceeds the bounds of reason. " ' "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Lister, supra*, 215 Cal.App.4th at p. 333.)

There is no indication in the record, express or implied, to suggest the trial court disregarded the expansive range of testimony or failed to fairly consider the factors relevant to

11

Dolores's apprehension of future abuse.  To the contrary, the trial court evaluated both the factual predicate for the initial DVRO and the basis for Dolores's continuing apprehension.  "[T]he mere existence of a protective order, typically issued several years earlier, seldom if ever will provide conclusive evidence the requesting party entertains a 'reasonable apprehension' of future abuse of any kind should that order expire."  (*Ritchie, supra,* 115 Cal.App.4th at p. 1291, italics omitted.)

### DISPOSITION

The order denying renewal of the restraining order is affirmed.  Neither party is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.