Filed 12/10/24  K.S. v. G.B. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| K.S.,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>G.B.,<br><br>　　　Defendant and Appellant. | H051065<br>(Santa Cruz County<br>　Super. Ct. No. 18FL01575) |

Several years after their divorce, pursuant to a stipulation, K.S. obtained a one-year domestic violence restraining order (DVRO) against her former husband G.B.[1] Approximately a month before the order expired, K.S. requested a renewed DVRO. After a contested hearing in which both parties testified, the court renewed the DVRO for five years.  G.B. now appeals, arguing that he should have been permitted to challenge the evidence underlying the original DVRO, and that the renewed DVRO was not supported by sufficient evidence.  As explained below, we disagree on both points and affirm the renewed DVRO.

---

[1] To protect their personal privacy interests consistent with California Rules of Court, rule 8.90(b)(1), we identify the parties and their relatives by initials only.

# I. BACKGROUND

## A. The Parties' 2019 Divorce

K.S. and G.B. were married in 1975, they separated in 2018, and in 2019 their marriage was terminated.

## B. The Original DVRO

In February 2022, K.S. requested a DVRO against G.B. She alleged that G.B. had engaged in "[c]ontinual unwanted contact after repeated notice it is unwanted," which inflicted emotional harm on her and disturbed her peace. Among other things, K.S. alleged that G.B. had sent a letter accusing her of having an affair 40 years ago with one of his friends and questioning the paternity of their daughter A.S.

K.S. also requested that the DVRO protect A.S., A.S.'s husband D.S., and their two children. K.S. alleged that G.B. had repeatedly contacted A.S. and her family despite their requests not to contact them, that there had been two prior DVRO cases against G.B., and that G.B. had entered into a civil no-contact/stay away agreement with "our family,"[2] which was effective from September 2019 through October 2021. Nevertheless, G.B. allegedly continued to send letters and e-mails to the family and, in November 2021 after the no-contact agreement expired, again began contacting K.S.

The trial court issued a temporary restraining order requiring G.B. to stay away from and have no contact with K.S., A.S., or A.S.'s family. The court also scheduled a hearing on the requested DVRO. Before the hearing, G.B. and K.S. filed a stipulation agreeing to a one-year DVRO with terms identical to the temporary restraining order, except that K.S. and G.B. agreed that they would be allowed to attend memorial services for family members and mutual friends and that at such services "they will stay apart from each other and not interact with each other."

---

[2] We interpret K.S.'s use of "our family" to refer to herself, A.S., D.S., and their two children.

On March 17, 2022, the trial court held a hearing on K.S.'s DVRO request. "Per the parties stipulation," the court ordered a DVRO to issue effective for one year and "identical to the temporary restraining order except as modified by the parties['] stipulation."

## C. The Renewed DVRO

In February 2023, K.S. requested a renewed DVRO. She alleged that in July 2022 G.B. violated the DVRO during a memorial service for a mutual friend which K.S. helped to organize. In an attached declaration, K.S. averred that G.B. arrived early; "hovered near," followed, and then "engaged" her when she unlocked the men's restroom; and stayed on site for 40 minutes after the end time. K.S. argued that, absent a renewed DVRO, G.B. would "return to his previous conduct" in light of his "history of pushing boundaries" and unwillingness to accept limitations with K.S. and her family.

G.B. opposed a renewed DVRO. He asserted that he had stipulated to the original DVRO because his mother was dying at the time and "did [not] agree that any of [K.S.'s] claims were true or that they constituted abuse." He also denied K.S.'s account of the memorial service and submitted declarations from several individuals present at the service. Finally, G.B. asserted that the DVRO had a number of adverse consequences, including heightened security screenings when he returned to the United States from doing volunteer work abroad.

In advance of the hearing on the renewed DVRO, K.S. submitted a trial statement with declarations from a mutual friend and D.S. Later A.S. also submitted a declaration. In their declarations, A.S. and D.S. described G.B.'s controlling behavior and "unpredictable rages," their attempts to prevent G.B. from contacting their children because of his anger and disregard for their requests about treating the children, and G.B.'s violation of the civil no-contact agreement. The mutual friend described how G.B. contacted her for a declaration about the memorial service and then said that he suspected K.S. of having an affair four decades ago.

3

At the hearing itself, K.S., A.S., and G.B. testified. After affirming the statements in her declaration, K.S. testified that prior to the original DVRO G.B. continued to contact her despite her requests to cease doing so, eventually leading her to block his e-mails. K.S. also testified that, after his e-mails were blocked, G.B. mailed to her a printed copy of an e-mail dated December 4, 2021, which accused her of having an affair with his oldest friend 40 years ago. In the e-mail, which was admitted into the record, G.B. told K.S. that he had just learned about "your fling" with his friend in which "you f***ed him." G.B. also asked, "is [A.S.] even my daughter?" K.S. testified that, when she learned that G.B. had relayed this accusation of infidelity to their mutual friend, she felt "threatened and coerced" in light of her "personal experience of his anger," and she had "serious trepidation" that G.B. was making the accusation to other mutual friends.

In addition, K.S. testified about the July 2022 memorial service. She said that the service, which was for a mutual friend, was held in a large venue. Because she was in charge of the setup and the take-down for the event, K.S. was there early. G.B. arrived before the event started, and when K.S. walked across the entire hall where the event was held to unlock the restrooms, G.B. came up to her and said that he was going to do that. K.S. testified that she found G.B.'s actions "very unsettling" because under the stipulation he was supposed to keep his distance. This left K.S. feeling "vulnerable" and in "need to have the protection of the Court, to enforce the boundaries that [G.B.] seems unable to hold himself accountable to observe."

In her testimony, A.S. affirmed the statements in her declaration, where, as mentioned above, she had described G.B.'s "controlling" nature and "unpredictable rages." She also testified that by 2018 she did not want G.B. to interact with her children because he repeatedly had violated the boundaries that she had tried to set and she felt unsafe around him. A.S. said that she was "very scared" that without a DVRO G.B. would "feel emboldened and entitled to intrude into our lives and disturb our peace" by

4

entering her property, contacting her children, and otherwise resuming his previous behaviors.

In his testimony, G.B. admitted that, in asking their mutual friend to execute a declaration about the June 2022 memorial service, he relayed the accusation that K.S. had had an affair. G.B. asserted that he did so to provide "context" and to explain why K.S. had requested a five-year restraining order. However, on cross-examination G.B. claimed that he could not recall whether he similarly relayed the accusation to the individuals who submitted declarations for him. G.B. also admitted that he did not consider whether the accusation would affect the friend's relationship with K.S. G.B. further admitted that he briefly encountered K.S. at the memorial service but claimed that the encounter was unintended and brief. Finally, G.B. testified about his efforts to comply with the original DVRO and avoid contact with K.S. and A.S.

After hearing argument from counsel, the trial court found that K.S. had "shown by a preponderance of evidence that the protected parties entertain a reasonable apprehension of future abuse" and that this apprehension is "genuine and reasonable." The court added that "both [K.S.] and [A.S.] were credible with respect to their presentation of the evidence, as particularly to the genuineness and authenticity of reasonable apprehension." Based on these findings, the court renewed the DVRO for five years.

G.B. filed a timely notice of appeal.

## II. DISCUSSION

G.B. argues that the trial court erred in preventing him from disputing the evidence submitted in support of the original DVRO. G.B. also argues that the renewed DVRO was not supported by sufficient evidence. Reviewing the trial court's ruling on renewal of the DVRO for abuse of discretion (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463), and the factual findings made in support of that ruling for substantial

5

evidence (*Parris J. v. Christopher U*. (2023) 96 Cal.App.5th 108, 116), we find no error or abuse of discretion.

## A. DVROs

The Domestic Violence Prevent Act (DVPA) (Family Code, §§ 6200-6460)[3] authorizes courts to issue restraining orders to prevent, among other things, "abuse." (*Id*, § 6300, subd. (a) [authorizing restraining orders "for the purpose specified in Section 6220"]; see also *id*., § 6220 [identifying the DVPA's purpose as, among other things, "to prevent acts of domestic violence, abuse, and sexual abuse"].) The DVPA defines the term "abuse" broadly. This definition includes "any behavior that has been or could be enjoined pursuant to Section 6320" (§ 6203, subd. (a)(4)), which in turn authorizes courts to enjoin "molesting, . . . stalking, threatening, . . . harassing, making annoying telephone calls," or "disturbing the peace of the other party." (§ 6320, subd. (a).) Finally, " 'disturbing the peace' " is defined as conduct that "destroys the mental or emotional calm of the other party." (§ 6320, subd. (c).) Thus, under the DVPA, courts may enjoin conduct that destroys a person's calm and tranquility. (See, e.g., *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.)

If a trial court has issued a DVRO after notice and hearing, it has broad authority to renew the DVRO. A renewed DVRO may be issued "without a showing of further abuse since the issuance of the original order." (§ 6345, subd. (a).) Imminent danger of abuse is not required either. (*Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 179 (*Michael M.*).) All that is required is "a reasonable apprehension that 'abuse will occur at some time in the future if the protective order is allowed to expire.' " (*Ibid.*)

In evaluating whether there is a reasonable apprehension of future abuse, and a renewed DVRO may be issued, trial courts "ordinarily should consider the evidence and findings on which the initial DVRO was based." (*Michael M*., *supra*, 92 Cal.App.5th at

---

[3] Subsequent undesignated statutory references are to the Family Code.

p. 180.) Indeed, the evidence and findings on which the original DVRO was based " 'often will be enough in themselves to provide the necessary proof' " to justify a renewed DVRO. (*Id*. at p. 180.) " '[S]ignificant changes in the circumstances surrounding the events justifying the initial protective order' " may also be relevant. (*Ibid.*) For example, courts may consider whether " 'the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order.' " (*Ibid.*)

When a renewed DVRO is sought, "the restrained party is not permitted 'to challenge the truth of the evidence and findings underlying the initial order.' " (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333 (*Lister*).) Similarly, appellate courts are not permitted to review "issues that could have been raised in an appeal from the original restraining order." (*Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1084.)

## B. The Original DVRO

Although G.B. acknowledges that a party opposing a renewed DVRO generally may not challenge the evidence underlying the sufficiency of the original DVRO, he argues that he should have been allowed to do so because he stipulated to the original DVRO and the trial court made no factual findings in support of it. We are not persuaded. Even though G.B. stipulated to the original DVRO, to issue a DVRO the trial court was required to find past abuse.

The DVPA authorizes a trial court to issue a DVRO only if it finds reasonable proof of past abuse. Section 6300 states that a restraining order may be issued "if an affidavit or testimony and any additional information provided to the court . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).)[4] While section 6300 also states that a restraining order may be issued "based

---

[4] Section 6300 provides in full: "(a) An order may be issued under this part to restrain any person for the purpose specified in Section 6220, if an affidavit or testimony and any additional information provided to the court pursuant to Section 6306, shows, to

solely on the affidavit or testimony of the person requesting the restraining order" (*ibid*.), nothing in the section suggests that a trial court may issue a restraining order based solely on a stipulation without finding "reasonable proof of a past act or acts of abuse." Moreover, the Legislature knew how to specify when a trial court may act based on a stipulation: Section 6345 states that a renewed DVRO is subject to termination "on written stipulation filed with the court." (§ 6345, subd. (a).) As there is no similar mention of stipulations in section 6300, we decline to imply into that section silent authority to issue DVROs based solely on a stipulation without making the finding of reasonable proof of past abuse expressly required by the section. (See, e.g., *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [" '[W]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' "].)

A recent First District decision interpreted the DVPA similarly. In *C.C. v. D.V.* (2024) 105 Cal.App.5th 101, the trial court issued a one-year DVRO pursuant to a stipulation by the parties. (*Id*. at p. 108.) The plaintiff subsequently argued that under section 3044 she was entitled to a presumption in favor of sole custody of her child with the defendant because in issuing the DVRO the trial court necessarily found that the defendant had engaged in domestic violence. (*Ibid*.) The First District agreed. Quoting section 6300, it observed that "[a] trial court may issue [a DVRO] only if 'an affidavit or testimony and any additional information provided to the court pursuant to Section 6306, shows, to the satisfaction of the court reasonable proof of a past act or acts of abuse.' " (*Id*. at p. 110.) Consequently, the court reasoned that, in issuing the DVRO, the trial court must have found that the defendant perpetrated domestic abuse because "had the

---

the satisfaction of the courts reasonable proof of an act or acts of abuse. The court may issue an order under this part solely based on the affidavit or testimony of the person requesting the restraining order. [¶] (b) An ex parte restraining order issued pursuant to Article 1 (commencing with Section 6320) shall not be denied solely because the other party was not provided with notice."

court not been satisfied there was reasonable proof of abuse—notwithstanding the parties' stipulation—issuing the [DVRO] would have been abuse of discretion. [Citation.]" (*Ibid.*)

We likewise presume that, in issuing the original DVRO, the trial court made the finding of past abuse required under section 6300. (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 509 ["The trial court's order 'is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent.' "].) As consequence, G.B. cannot now challenge the evidence of past abuse underlying the original DVRO. (*Lister*, *supra*, 215 Cal.App.4th at p. 333.)

## C. The Renewed DVRO

G.B. also argues that the renewed DVRO was not supported by sufficient evidence. We disagree.

When an appellant argues that a finding is not supported by sufficient evidence, " 'our review "*begins* and *ends* with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination." ' " (*Padideh v. Moradi* (2023) 89 Cal.App.5th 418, 439 (*Padideh*).) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and ' "substantial" proof of the essentials which the law requires in a particular case.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.) In applying this standard, we do not reweigh the evidence in the record or evaluate the credibility of witnesses. (*Id*. at p. 1008.) Instead, we view the record in the light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences to support the judgment. (*Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291, 308.) This is a " ' "daunting burden," ' " which makes "[r]eversal for insufficient evidence . . . rare." (*Padideh*, *supra*, 89 Cal.App.5th at p. 438.)

Here, the trial court had substantial evidence of past abuse by G.B. First, A.S. averred in her declaration that G.B. was "controlling," subject to "unpredictable rages,"

and had no sense of responsibility for the harms that he caused.  Second, K.S. testified that G.B. repeatedly sent her e-mails in violation of requests not to do so, and A.S. similarly testified that G.B. refused to observe the boundaries that she tried to impose on his interactions with her children.  Third, in spite of G.B.'s stipulation that he would "stay apart" from K.S. and "not interact" with her at memorial services, at a July 2022 memorial service he followed K.S. to the restrooms after she walked across a large hall to open them and spoke with her, albeit briefly.  Fourth, in December 2021, in an e-mail that G.B. printed out and mailed to K.S. because she had blocked his e-mails, G.B. accused K.S. of having "f***ed" one of his oldest friends and questioned A.S.'s paternity. Moreover, G.B. shared this accusation of infidelity with at least one mutual friend, which K.S. testified made her feel "threatened and coerced" and caused her "serious trepidation" that G.B. might be making similar accusations to others.

This evidence is more than sufficient to support a finding of past abuse by G.B. As noted above, under the DVPA, the term " 'abuse' " is defined broadly to include "disturbing the peace" (§ 6203, subd. (a)(4) [defining abuse to include behavior that may be enjoined under section 6320]; *id*., § 6320, subd. (a) [authorizing courts to enjoin "disturbing the peace"]), and in turn " 'disturbing the peace' " is defined to mean any conduct that "destroys the mental or emotional calm" of a party.  (§ 6320, subd. (c).) Based on K.S.'s testimony, the trial court could have found that G.B.'s accusation of infidelity and K.S.'s "serious trepidation" that he would spread those accusations destroyed her mental and emotional calm.  In addition, in light of the testimony regarding G.B.'s controlling nature and unpredictable rages, his repeated refusal to honor no-contact requests, and violation of the original DVRO, the trial court could have found that K.S. and A.S. had a well-founded fear of unwanted conduct that would destroy their mental and emotional calm.  (See, e.g., *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1144 [holding that unannounced and uninvited visits and repeated contacts by

10

phone, e-mail, and text in the face of requests of no contact, " 'disturb[ed] the peace' " and constituted " 'abuse' " within the meaning of § 6320].)

Finally, the trial court had substantial evidence of a reasonable apprehension of similar future abuse. Based on G.B.'s 2021 accusation of infidelity, his dubious decision more than two years later in March 2023 to share that accusation with a mutual friend, and the absence of any significant remorse for doing so, the trial court reasonably could have found that G.B. was still under the sway of the emotions that led to his earlier abuse of K.S. and A.S. Additionally, in light of G.B.'s earlier refusal to abide by requests to refrain from contacting them, the court could have concluded that G.B. was likely to engage in unwanted conduct absent a renewed court order restraining him. Finally, nothing in G.B.'s own papers or testimony indicated " 'significant changes in the circumstances surrounding the events justifying the initial protective order' " that reduced the risk of future abuse. (*Michael M.*, *supra*, 92 Cal.App.5th at p. 180.) To the contrary, the parties live fairly close to each other in a small community, with numerous mutual friends and acquaintances where, absent a substantial change in G.B.'s behavior, the risk of unwanted contact is high.

G.B. objects that the trial court prevented him from presenting evidence contesting K.S.'s allegations of past abuse. However, G.B. conceded at oral argument that he did not attempt to present any such evidence in the trial court. Moreover, while the trial court informed the parties that "we are not here to relitigate the underlying domestic violence restraining order," it did not prohibit G.B. from presenting evidence concerning past abuse that was relevant to determining whether K.S. had a reasonable apprehension of future abuse. To the contrary, the trial court stated that it could not exclude information about the conduct underlying the DVRO "to the extent that information is relevant as to one's reasonable apprehension." Indeed, G.B. was permitted to, and did, cross-examine K.S. regarding the e-mails and infidelity accusations that formed the basis of her initial DVRO request, and he also testified regarding these matters.

11

We therefore conclude that substantial evidence supports the trial court's finding that "it is more probable than not there was a sufficient risk of future abuse" and that the trial court did not abuse its discretion in renewing the DVRO against G.B.  (*Lister*, *supra*, 215 Cal.App.4th at p. 335.)

### III.  DISPOSITION

The renewed DVRO is affirmed.  Respondent is entitled to her reasonable costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

_____
BROMBERG, J.

WE CONCUR:


_____
LIE, ACTING P. J.



_____
WILSON, J.



*K.S. v. G.B.*
H051065